R. L. BROWN, JESSIE L. ROBERTS, and BERTA BROWN WORTHINGTON, *Appellants*, vs. WINIFRED NELLIS BROWN, *Appellee.*

143 So. 737.

Division A.

Opinion filed August 9, 1932.

Petition for rehearing denied October 20, 1932.

*Herbert S. Phillips* and *James Booth,* for Appellants;

*Kelly, Casler & Thompson,* for Appellee.

ELLIS, J.—George L. Brown of St. Petersburg, Florida, a dentist by profession, in July, 1904, acquired the title to the south sixty (60) feet of Lots fifteen (15) and sixteen (16) of Block Eleven (11) of the revised map of St. Petersburg. At that time he was unmarried. His

mother, Mrs. Susan A. Brown, lived with him at the Central Hotel on Second Street and afterwards in a house across the street from the property above described.

After the purchase of the property Doctor Brown and his mother lived upon it until her death in May, 1914. During that time, Mrs. Johnson, then a Mrs. Worthington, sister to Doctor Brown, lived with them. After Mrs. Brown's death Mrs. Worthington continued to live with her brother upon the property for about ten years. Doctor Brown married in August, 1923, and died in June, 1924. Shortly after the marriage Mrs. Worthington left the place.

For several years prior to Doctor Brown's death he was in very poor health. He suffered from a disease known as "Disseminated Sclerosis," the symptoms of which, according to the testimony of Doctor Henry Welch, is loss of control of some of the organs of the body, the power of clear articulation of speech, partial loss of memory, loss of control of the bladder, difficult locomotion and loss of sense of equilibrium. For several months prior to his death he was practically helpless. The course of the disease is about five or ten years. His sister nursed him and cared for him at the home during the greater part of his illness.

Mrs. Susan A. Brown left surviving her four children: Doctor Brown, Mrs. Worthington, Mrs. J. B. Roberts and R. L. Brown. In January, 1925, R. L. Brown, Jessie L. Roberts and Mrs. Berta Brown Worthington exhibited their amended bill in the Circuit Court for Pinellas County against Mrs. Winifred Nellis Brown, widow of Doctor George L. Brown, to declare a resulting trust in the property; alleging that Doctor George L. Brown held the title in trust for his mother and upon her death it descended to the four children of Mrs. Brown in coparce-

nary; the bill also prayed for a partition and that Mrs. Winifred Nellis Brown, the widow of Doctor George L. Brown, account for the rents received from the property and to pay over to the complainants three-fourths of the sum found to have been collected by her.

The relief sought by the complainants rests upon the allegations that Mrs. Susan A. Brown bought the property with her own money and that it was agreed between her and her son, Doctor George L. Brown, that the title to the property should be taken in his name in trust for her; that she resided upon the property until her death during all of which time Doctor Brown and the complainants "considered and recognized their said mother as the sole owner" of the same. The remaining allegations of the bill consist mainly of explanations for the delay of approximately ten years in seeking relief to which the complainants assert their right and the care of Doctor Brown during his prolonged illness by his mother and Mrs. Worthington, his sister.

A trust was sought to be established upon two theories: first, an express verbal trust; second, a resulting trust.

The chancellor decreed in favor of the defendant and dismissed the bill. His finding was that the complainants failed to prove the allegations of the bill and "failed to establish a trust in their favor." From that decree the complainants appealed. The case was orally argued and fully briefed.

The decree should be affirmed. In the first place there exists no evidence whatsoever of any agreement verbal or otherwise between Doctor Brown and his mother that the title to the property should be held by him in trust for her benefit. Upon the other hand there is some evidence that Mrs. Susan A. Brown, even if she bought the property with her own money or contributed any portion of the purchase price thereof, did it "so as to

make a home for George,'' her son, and when the deed was obtained she knew that the title was taken in her son's name.

We find no evidence to support the theory that the transaction by which the son George acquired the title was affected by any circumstances which gave or tended to give to it any quality of a trusteeship. There was evidence that Mrs. Susan Brown desired to purchase the property; that sometime before she had sold some property in Dade City from which she had realized about nine hundred dollars and that she had some bonds which were held by her son but whether such funds were actually paid by her or through her son for the property and if so that it was not intended by her as an advancement to him there is no evidence. The evidence of the transaction affords at best the merest conjecture that a trust was actually created by operation of law and none whatsoever that one was created by verbal or written agreement.

When a resulting trust is sought to be established by parol evidence the burden rests upon the person asserting the existence of the trust to remove every reasonable doubt as to its existence by clear, strong and unequivocal evidence. Fox v. Kimball, 92 Fla. 401, 109 South. Rep. 465; McGill vs. Chappelle, 71 Fla. 479, 71 South. Rep. 836; Semple v. Semple, 90 Fla. 7, 105 South. Rep. 134; Johnson v. Sherehouse, 61 Fla. 647, 54 South. Rep. 892.

The equitable presumption that where one pays for property the title to which is taken in another that a resulting trust arises in favor of the party supplying the purchase money (Dewhurst v. Wright, 29 Fla. 223, 10 South. Rep. 682) is rebutted where it appears that the person in whose name the title is taken should take the beneficial interest as well. See Perry on Trusts and Trustees, Sec. 139.

In the case at bar it appears that even if Mrs. Susan Brown supplied the purchase money for the property or any considerable portion of the price she intended that it was to be for a home for her son. The facts bear out that thought for he actually lived upon the place for about twenty years, ten of which was after the death of his mother, during which time no question of the arrangement was raised by Mrs. Brown in her lifetime nor by the complainants after her death until the bringing of this suit. It is true some explanation is sought to be made of complainants' silence but it is not conclusive nor altogether consistent as to at least two of the complainants, Mrs. J. B. Roberts and R. L. Brown, and even Mrs. Worthington seems to have developed no particular dissatisfaction with the arrangement until the disagreement between her and the defendant. According to Mrs. Worthington's testimony she seemed to be content with the statement of her brother to her as follows: "Berta, we will draw up a contract. At your death I get everything, and at my death you get it." That contract she said was drawn but seems to have been lost. The moving consideration for that statement seems to have been Mrs. Worthington's faithfulness to her mother during her illness and to her brother during a great part of his.

We are unable to say in this case that the findings of the chancellor were clearly erroneous. So the decree is affirmed.

BUFORD, C.J., AND WHITFIELD, AND DAVIS, J.J., concur.
TERRELL AND BROWN, J.J., dissent.