C. D. BENBOW v. BENBOW, Trustee, *et al.*

157 So. 512.
Division A.
Opinion Filed October 19, 1934.
Rehearing Denied November 30, 1934.

38

*Baskin & Jordan,* and *Ralph Richards,* for Appellant;
*Treadwell & Treadwell,* and *B. A. Bales,* for Appellees.

ELLIS, J.—This is an appeal from a decree in which the Trustee of lands, who denied the trust and withheld possession from his *cestui que* trust until compelled by a proceeding in equity to acknowledge it in the terms alleged by the *cestui que* trust, is allowed reimbursement of certain money spent by the Trustee for improvements, as he claims, upon the lands and interest upon the amounts so expended and declaring the same to be a lien upon the lands and ordering the same sold to satisfy the lien so declared to exist. That the Trustee denied the existence of the trust is evidenced by the bill and answer.

The bill of complaint which was filed in September, 1929, alleges in substance that the complainant purchased two tracts of land in Glades County, formerly DeSoto County, in the vicinity of Moore Haven; one tract in Sections 17 and 20 purchased from the Moore Haven Stock Farm, a corporation, at the price of about forty-three thousand dollars and the other tract in Section 21, purchased from The South Florida Farms Company, a corporation, at a price of about twenty-seven thousand dollars; that the purchase price of each tract was paid by the complainant. Both tracts lie in Township 42 South, Range 33 East. The bill does not allege the number of acres contained in both tracts but the deed from the South Florida Farms Company shows that the tract in Section 21 contains 440 acres more or less. The tract purchased from the Moore Haven Stock Farm contains apparently 640 acres. An examination of the township map shows that the land lies in the form of the capital letter "L."

The bill alleges that for convenience to the complainant the title to each tract was taken in the name of O. C. Ben-

bow, as trustee, to be held by him in trust for the complainant so that sales of the land could be more conveniently made by the Trustee who was put into possession of the property under an agreement with the complainant. The bill alleges that the agreement grew out of a suggestion by O. C. Benbow that large profits could be made by farming operations in the vicinity in which the land was located and that he would farm the lands for the complainant on the basis of that of a "share-cropper"; that is to say that he would use his best efforts in farming the land and should receive one-half of the profits from the farming operations for his services; that the agreement was not reduced to writing nor was any time agreed on for its continuance but that it should continue so long as it was satisfactory to both parties.

It is alleged that no intention existed between the parties that the Trustee, O. C. Benbow should have any interest in the land but that over a period of several years both O. C. Benbow and his wife, who resided upon the land, have recognized the complainant as the sole owner of the lands. It is alleged that the complainant now, on account of changed conditions, has abandoned his original intention of selling the lands in small tracts and desires to have the title rest in him instead of being held by a Trustee for his use, but that the defendant refuses to execute the necessary conveyance and Mrs. Benbow, the defendant's wife, also claims some interest in the land. The bill prayed that the complainant be declared to be the sole owner of the property, that neither defendant has any interest in it and that O. C. Benbow be required by proper conveyance to vest the legal title to the property in the complainant.

The answer denied the theory on which the bill was framed while admitting that the complainant purchased the

land and paid for it with his own funds in which the defendant had no interest, but it was averred that while the lands were purchased as alleged in the bill, the Moore Haven Stock Farms tract in September, 1918, and the South Florida Farm tract in May, 1919, the complainant and defendant had agreed that the defendant, who was "lucratively employed" during the year 1918, should live on the land and cultivate it, but not for one half of the profits from the farming operations nor was the arrangement, which was made, to continue only so long as both parties were satisfied. It was averred that when the Moore Haven Stock Farm tract was purchased it was with the purpose of selling the same in small tracts and defendant did negotiate for the sale of a small tract but complainant refused to agree to it. It was denied that the title to the land was placed in the defendant to be held merely as trustee and denied that complainant was the real owner of it, but averred that the defendants have a "real interest in said land."

It is averred that the agreement between the complainant and defendant O. C. Benbow came about in the following manner. The defendant was a successful farmer and his services were in demand at a satisfactory compensation in an advisory capacity; that after some conversations between him and the complainant it was agreed that the complainant should buy the lands, furnish sufficient funds to place them in farming condition and pay the living expenses of the defendant, who should take charge of the land and cultivate it and that the profit from such operations should be equally divided between them and that the profits from sales of small tracts should also be equally divided between them. It was agreed that the defendant should have the exclusive management of the land and farm; that the agreement having been made the defendant disposed of his prop-

erty holdings in Manatee County and took charge of the land and proceeded with its development, but that in October, 1919, the complainant began to interfere and placed his son, E. P. Benbow, in charge of a portion of the property who was extravagant and wasteful in the farming operations as a result of which the complainant lost large sums of money in "attempted improvements and farming operations."

It is alleged that such situation existed until July, 1921, when the defendant decided to sever his connection with the property and move away. With such purpose in view he offered to convey the land which "stood in defendant's" name to anyone whom the complainant should designate; that complainant would not agree to that proposal and persuaded the defendant to "return and assume complete control and management of said property"; that defendant upon returning to the farm did find that the conditions were bad and the business "demoralized" as complainant had represented; that the defendant did then again take charge temporarily of the "affairs of the farm and straightened the same out and got them in proper running order"; that the defendant then advised the complainant that he would not continue further to operate the farm under the agreement as originally entered because due to the "extravagance and mismanagement" of complainant and his son, E. P. Benbow, large losses had been sustained which had been augmented by certain providential causes and if those losses were added to the original cost of the land that the property when sold would produce no profit to the defendant which the complainant then admitted, and agreed with the defendant that if he would "again take full charge of management of said property and devote his time and experience to development and farming thereof all the net in-

come of every nature derived from said property should be divided equally" between them and that the amount for which all property should be sold above the first cost should also be divided equally between them, the complainant agreeing to "absorb as his loss all losses that had been sustained in the operation of the property and all interest due upon the original purchase price" up to date which was in September, 1921. It was averred that on such terms the defendant took possession of the property without any financial assistance from the complainant except money necessary to pay for seed potatoes and taxes for 1926 and 1927.

It is also averred that in July, 1928, the defendant began negotiations with the Southern Sugar Company and with the consent of complainant leased the property to that company at a yearly rental of ten dollars per acre, the lease carrying an option to purchase the lands at $200.00 per acre. The defendant in the answer asserted a right to half of the lease price of the land and in the event of its purchase by the company to one-half of the purchase price after deducting the first cost thereof to complainant.

The answer then set up a claim for affirmative relief based upon the averments that the complainant sought the defendant and persuaded him to close out his farming interests and take possession of the lands purchased by the complainant and take exclusive control and management of the property at Moore Haven; that the complainant under the averred agreement undertook to pay for the land and to advance to the defendant sufficient funds to develop the property and pay the defendant's living expenses; that the defendant entered upon the discharge of his duties but that in 1919 the complainant placed his son, E. P. Benbow, in control of certain departments or branches of the farm which was a breach of the agreement; that such arrange-

ment handicapped and embarrassed the defendant but he continued his work until about the middle of the year 1921, by which time, due to the mismanagement by complainant and his son, great losses were sustained and providential losses increased the loss due to mismanagement, so that due to the unsatisfactory condition existing the defendant decided to abandon the enterprise and did sever his connection therewith and offered to convey the land to the complainant but the complainant opposed this action on defendant's part and persuaded the defendant to return to the lands and assume entire control under the terms of the original agreement modified by the promise of the complainant to absorb all the losses which had been sustained, to furnish all necessary money for upkeep and development of the property and that all net income derived from the property should be divided equally between them.

The negotiations with the Southern Sugar Company were again alleged and it was further alleged that through defendant's suggestion the complainant acquired from the State Board of Education about 96 acres in Section 16 of the same Township and Range which should be covered by the original agreement, that is to say the parties were to share equally in profits to be derived from it; that the title was to be held by the defendant in the same way as the other lands but through mistake the title was taken in the name of complainant. It is also averred that those lands were included in the agreement with the Southern Sugar Company.

It is averred that the defendant purchased a tractor at a cost to himself of $2,200.00 and for repairs to buildings about $4,800.00 which under the agreement as set up in the answer the complainant was obligated to furnish.

The answer prays that an account be taken of the monies

expended by the defendant in this behalf and that complainant be decreed to pay the sum found to be due on account of such expenditure and that the defendant be decreed to have a beneficial interest in the lands to the extent of a half interest in the net income from the property whether derived from a lease of the same or a sale of it after deducting the first cost of the same and that the complainant be decreed to hold the title to the land in Section 16 in trust for himself and the defendant subject to the terms of the alleged agreement. By an amendment to the prayer for affirmative relief the defendant asked that the court would declare a lien upon the property held by the defendant for the payment of the amount of money which the court may find to be due to him from the complainant.

The complainant replied to all that portion of the answer in which the defendant asked for affirmative relief and alleged that the defendant had possession and use of the lands for his own benefit from 1922 to 1928 inclusive and whatever money he may have spent in and about the management of the lands he expended voluntarily for his own benefit and the same did not result in enhancing the permanent value of the property; that the defendant should be charged with the reasonable rental value of the property during such time; that under the agreement of 1922 the defendant agreed to pay all taxes on the property as rental for the use thereof; that during that period the taxes upon the property amounted to $22,623.65 of which the defendant only paid $4,928.28 and the complainant paid the remainder for which under the agreement as set up by defendant the complainant should be allowed an offset. It is alleged that the litigation was caused by the refusal of the defendant to reconvey the lands to the complainant and the repudiation of the trust so that the defendant should be charged with all

sums necessarily expended by the complainant in carrying on the litigation and obtaining the title to his land.

The above lengthy statement of the allegations of the bill and averments of the answer we deemed it proper to make rather than to attempt a terse recital of the contents of those two documents.

Concise statements not infrequently leave much to be understood which in a case so earnestly contested as the one at bar is seldom if ever satisfactory to the able solicitors engaged in the cause.

In a matter involving the details of a trust such as the one asserted by the defendant in this case to exist, the strictest attention to every agreement or understanding between the parties is essential to the end that the court may determine whether a trust in fact exists or if it does what its exact nature and character is.

One who asserts the existence of a trust different in terms from the written instrument by which it was created, or who seeks to impose terms or benefits omitted from the instrument creating the trust has the burden resting upon him to establish his claims by evidence clear, satisfactory and convincing. Such an one is in a position analogous to the one who asserts the existence of an implied or resulting trust. See Johnston v. Sherehouse, 61 Fla. 647, 54 South. Rep. 892, Lofton v. Sterrett, 23 Fla. 565, 2 South. Rep. 837; Booth v. Lenox, 45 Fla. 191, 34 South. Rep. 566; Quinn v. Phipps, 93 Fla. 805, 113 South. Rep. 419, 54 A. L. R. 1173; Hill v. Beacham, 79 Fla. 430, 35 South. Rep. 147; McGill v. Chappelle, 71 Fla. 479, 71 South. Rep. 836; Croker v. Palm Beach Estates, 94 Fla. 171, 114 South. Rep. 225; Geter v. Simmons, 57 Fla. 423, 49 South. Rep. 131; Fox v. Kinball, 92 Fla. 401, 109 South. Rep. 465; Burgess

v. Wirt, 91 Fla. 425, 108 South. Rep. 169; Brown v. Brown, 106 Fla. 423, 143 South. Rep. 737.

In many of the above cases it was held that the burden of establishing such a trust is not only upon the person asserting it but the evidence must be so clear, strong and unequivocal as to remove from the mind every reasonable doubt. See Semple v. Semple, 90 Fla. 7, 105 South. Rep. 134; McGill v. Chappelle, *supra.*

The determination whether a trust exists different from the terms in which the conveyance vests the title depends upon the intention of the parties at the time the instrument is executed. The answer in the case at bar asserts the existence of a trust as the result of an agreement between the complainant who paid the purchase price of the land and the defendant in whose name the title was taken as Trustee in respect of two of the tracts of land and between the complainant in whose name the title to the third tract of land was taken and the defendant and in each case the character of the trust as averred by the answer depends upon an oral agreement averred by the defendant to have existed between him and the complainant which the latter unqualifiedly denies existed.

The pleadings agree that the purchase price of all the tracts of land was paid by the complainant and that as to the first two tracts the legal title was taken in the name of the defendant as trustee. In the absence of such agreement a presumption exists that a resulting trust arises in favor of the complainant who paid the purchase price. See Dewhurst v. Wright, 29 Fla. 223, 10 South. Rep. 682.

It has been held, however, that such presumption may be rebutted by facts which make it to appear that the person in whose name the title is taken should take the beneficial

interest as well. See Brown v. Brown, *supra;* Fox v. Kimball, *supra.*

While the Fox-Kimball case was decided by a divided court the law of resulting trusts was clearly stated by Mr. Justice BUFORD and concurred in by all the members of the Court. The Court was divided merely on the sufficiency of the evidence to establish the trust. More correctly stated the members of the Court were not agreed that the record disclosed reversible error on the question of the probative force of the evidence.

The facts in the case at bar as disclosed by the answer insofar as they are relied upon to establish in behalf of the defendant an interest in the lands as a beneficiary fall within that class of transactions from which this Court in the case of Quinn v. Phipps, *supra,* said equity would relieve. It was said in that case, Mr. Justice TERRELL speaking for the Court, that " 'when a person through the influence of a confidential relation acquires title to property, or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief.' "

It is apparent from the pleadings as well as the evidence in the case that the relations between the complainant and the defendant began in the confidence which the complainant at the outset of their negotiations reposed in the defendant. The complainant relied on the defendant's advice and his representations as to his ability and success as a practical farmer. He relied on the latter's judgment as to the suitableness of the land for farming purposes, his representation as to his ability to successfully cultivate it, and the faith which he reposed in defendant's integrity.

So the complainant agreed to purchase the land, paid a large sum of money therefor, had the title placed in the name

of the defendant as trustee, placed him in possession of the property and gave him full control and management of it, and advanced money for the necessary improvements upon the place and living expenses of the defendant, the profits to be equally divided between them.

The defendant says that he gave up a lucrative employment, rather a potentially lucrative employment in Manatee County, because the averments of the answer in this regard are by no means specific and clear as they might be if the fact was as averred but on the other hand they are general in character. He avers that his "services in an advisory capacity were in ready demand from various parties interested in farming." It is averred that his "time was fully occupied" and that the farmers "were ready and willing to pay unto defendant O. C. Benbow lucrative compensation for his services in an advisory capacity."

Whatever may be the force of such averments as showing what if anything of value the defendant gave or parted with by way of sacrifice of his interests when he accepted employment with the complainant the fact is that the complainant acted upon the defendant's opinion as to the suitableness of the land for farming purposes, its value and the defendant's ability to make a paying proposition out of the purchase by the complainant and cultivation of the land .by the defendant with all provisions made, for running expenses of the farm and living expenses of the defendant, by the complainant.

The answer avers that the defendant abandoned the properties and moved away from them in July, 1921, which was within about two years, and then offered to "deed the land" that stood in his name to any one whom the complainant should designate.

No claim was set up then by the defendant that his con-

tract secured to him an interest in the lands nor that he had any beneficial interest in them whatever. Neither do the averments show that the business as managed by the defendant was productive of any profit.

Whatever of interest, beneficial or otherwise, the defendant claimed to have in the land seems from the averments of the answer to rest upon negotiations which he had with complainant subsequently to the defendant's return to the properties upon the complainant's solicitation in which the complainant agreed. So it is averred that he would "absorb as his loss all losses that had been sustained in the operation of the property and all interest due upon the original purchase price up to said date which was in the month of September, 1921" and the net income derived from the property should be divided equally between them and that when the property should be sold "all over the first cost of said property that same should be sold for should then be divided equally" between them.

That alleged second agreement constitutes the basis of the defendant's claim for the affirmative relief which he sought in his answer.

Testimony was received and the Chancellor by decree dated March, 1931, decided that the complainant was the lawful owner of the property described and that the legal title was held by the defendant in trust for the complainant; that the defendant neither individually nor in his capacity as trustee had any right, title or interest in the same and that his wife had no dower rights or other rights, title or interest of any kind in or to the property.

The decree directed the defendant and his wife to convey the fee simple title to the complainant by proper warranty deed and fixed a date within five days for the execution and delivery of the deed. The decree also decided

that the defendants had no right, title or interest or any claim to the lands described as being in fractional Section 16, Township 42, South Range 33 East, which were the school lands acquired from the State Board of Education which the answer avers should have been taken in defendant's name as trustee under the terms of the alleged agreement. The decree denied defendant's prayer for affirmative relief but without prejudice to the right of defendant to bring any action that he may be advised for an accounting for any monies that may be due him on account of the "contract or transaction between him and the complainant which is the subject matter of this suit."

A petition for a rehearing was filed by the defendant about a month and a half after the decree upon the grounds that if the defendant should be required to begin a common law action to recover the money they had expended upon the property the complainant would not be required to do equity, that the statute of limitations had run against the claim and that as a condition precedent to complainant's recovery he should be required to return to the defendant all the money which the defendant expended upon the property and that the court had overlooked the fact disclosed by the letters of the complainant which were inconsistent with the idea that the defendant had no material interest in the property and the court had also ignored the actions and conduct of the defendant over a long period of time which were consistent with the idea that the defendant had a beneficial interest in the property and that there "was no question of the statute of frauds or violation of the trust Act involved in this litigation."

Six months, approximately, after the filing of the petition for a rehearing the Chancellor made an order affirming the final decree theretofore entered as to the ownership of the

property but granted a rehearing for the purpose of an accounting between the parties to determine what sum if any the defendant is entitled to receive from the complainant for which the defendant may be entitled to a lien against the lands involved in the suit and the cause was referred to a special examiner to take and report the testimony. The order was entered four months later.

The examiner took the testimony and made a report of it to the court on which the Chancellor on February 23, 1933, entered his decree in which the court ordered that the defendant should recover from the complainant the sum of $12,196.00 made up of the following items:

Two tractors purchased by the defendant $2500.00
Interest at 8% from Jan. 1, 1920................ 2600.00
Fighting fire in the fall of 1927................ 100.00
Interest at 8%.............................................. 40.00
Permanent improvements upon the prop-
     erty made in the Fall of 1926............ 4700.00
Interest from Jan. 1, 1927........................ 2256.00
                                            $12,196.00

A lien was declared upon the lands in favor of the defendant to secure the payment of the sums allowed. The court also held that the defendant should not be required to pay rental on the land for his use and occupation of it. The lien was declared to exist on all the lands including those lying in Section 16. The amount allowed was ordered to be paid with interest within fifteen days and in default thereof the lands should be sold to satisfy the lien. From that decree the complainant appealed.

The decree of February 28, 1931, was without error. The bill had for its purpose the conveyance of the legal title from the defendant to the complainant of the two tracts of

land in Sections 17, 20 and 21, purchased from the Moore-Haven Stock Farm and the South Florida Farms Company. The evidence taken in the case on which the decree rested fully sustained the Chancellor in the conclusion that although the property was held in the name of the defendant as trustee he had no right, title nor interest of any character in and to the same, nor did his wife have any interest of any character therein, and the defendant and his wife were directed to convey the land to complainant by proper warranty deed. Adjudicating the defendant's claim, as set up in his answer, to the lands in Section 16 the court decreed that he had no interest of any character therein.

Neither the averments of the answer nor the facts offered in support thereof justify the conclusion that the defendant held the title to the land in any other capacity than as a mere naked trustee. Both the averments of the answer and the evidence show that the possession of the land by the defendant was in pursuance of an agreement between the parties that the property should be managed by the defendant in farming operations, only the profits from which were to be equally divided between them, the complainant to pay all the purchase price and advance necessary expenses for operation and living expenses to the defendant which should be recouped by the complainant out of the proceeds derived from the farming operations.

The original arrangement after about two years unsuccessful management was discontinued by the defendant and the property vacated by him and he offered then to convey the property to the complainant without any claim for money expended for tractors bought a year before or on any other account.

The defendant's claim for affirmative relief therefore rests, according to his answer, upon the averred amended

agreement which according to his averments provided that he had a beneficial interest in the lands to the extent of one-half interest in the proceeds which might be derived from the sale of the property above the first cost without interest.

The court evidently considered and we think correctly that such were not the terms of either the original or subsequent or amended agreement which constituted the basis of the new relation between the parties.

In the light of the first agreement the second was most liberal in its provisions toward the defendant. The relation of proprietor and farm manager was restored on the basis that the manager, the defendant, should carry on farming operations, the profits derived from which should be equally divided between them, the complainant agreeing to absorb all previous losses due to defendant's failures to successfully carry on the operations and that complainant would charge against the expenses no interest on the capital invested by him.

It follows therefore that whatever claim the defendant might have on account of the purchase of tractors before the new agreement was made as well as whatever money he spent in farming operations under the new agreement were a charge against such operations and at most under a very liberal construction of the agreement a personal account against the complainant for money paid for his use and benefit. The holding that such money was expended by the defendant in the capacity of Trustee of the property for its improvement and benefit has no support in the evidence nor in the view which the court had of the case as expressed in the first decree.

The evidence in the case tends to establish the fact that the first agreement constituted a joint adventure between

the parties in the management of farm operations upon lands which the complainant was to purchase and pay for and supply funds necessary to prepare the lands for cultivation, to erect the necessary buildings for occupancy by the defendant and living expenses for him. These latter sums, exclusive of the purchase price of the lands, were to be repaid as well as interest upon the investment from the proceeds of the farming operations. The remainder, representing profit, was to be equally divided between them. The defendant was to have no interest in the lands and not to share in the proceeds of the sale of any of them.

That agreement, after about two years of operations under it, during which for some cause no profits were earned, due, as the defendant averred, to the interference of the complainant's son and his wastefulness and extravagance, the defendant abandoned and moved away from the premises and offered to convey the legal title of the land to complainant.

After some negotiations the relations of the parties were renewed on the basis of the terms of the original or first agreement considerably modified in defendant's favor. Under the second agreement he was to have exclusive management and control of the farming operations, the complainant to supply the necessary funds for seeds, living expenses for the defendant, assume all losses that had occurred under the first agreement and not to charge as part of the expense of the farming operations the interest upon the original investment, and the defendant to have no interest of any character in the lands.

In those circumstances whatever money was spent by the defendant for any necessaries, conveniences or improvements would be rightly chargeable against the farming operations to be repaid from the proceeds of such enterprise.

The expenditures claimed to have been made by the defendant during that period cannot be considered as moneys expended by a trustee for the benefit of the estate of his *cestui que* trust.

Now the bill alleged that prior to the institution of the suit the defendant became antagonistic to the complainant and refused to execute a deed to him conveying the land and refused to acknowledge the complainant as the sole owner of the property, but claimed an interest in the land. That allegation was supported by the averments of the answer in which the defendant averred as a ground for affirmative relief that complainant agreed that "all of the net income of every nature derived from said property should be divided equally" between them. That agreement was reached, as the answer averred because the defendant pointed out to the complainant that great losses had been sustained due to the extravagance and mismanagement of complainant's son and if those losses and those incurred through providential causes were added to the original purchase price of the land that when the same was sold there would not be any profit left to be divided. Then, so it is averred by defendant, complainant agreed that if the property should be sold, all over and above the first costs of it for which it might be sold would then be divided equally between the complainant and defendant.

Thus the defendant set up a trust coupled with an interest in the lands. The Chancellor, however, declined to accept that view and in the first decree held that the defendant had "no right, title or interest in or to the property," nor did the second decree from which the appeal was taken modify that view, which we think was correct.

So that the situation presented on the application for affirmative relief is that of a naked trustee holding no inter-

est in the property wrongfully retaining the title which he knew he ought to convey to the righful owner.

The trust was not a private discretionary active trust coupled with an interest such as existed in the case of Croker v. Palm Beach Estates, 94 Fla. 171, 114 South. Rep. 225.

The trustee did not even upon his own theory as to the nature of his possession of the property and interest therein as averred observe the duties of one in the position which he asserted he occupied in relation to the property by keeping clear, accurate and distinct accounts. See 39 Cyc. 464; 26 R. C. L. 1387; 2 Perry on Trusts (7th Ed.) Sec. 821; Dillman v. Hastings, 144 U. S. 136, 36 L. Ed. 378, 12 Sup. Ct. Rep. 662.

There was nothing to show that the complainant stood by and allowed the averred expenditures or that he had notice of them. See Kelly v. Nichols, 18 R. I. 62, text 69, 25 Atl. Rep. 840, text 843, 19 L. R. A. 413 text 427.

If the Trustee fails to keep clear, distinct and accurate accounts all presumptions are against him and all obscurities and doubts are to be taken adversely to him. If he loses his accounts he must bear any resulting damage. 2 Perry on Trusts, *supra*.

The burden of proof is upon him to show that the money expended was a proper disbursement. Smith v. Robinson, 83 N. J. Eq. 384, 90 Atl. Rep. 1063.

The proposition as suggested by appellee that the decree appealed from may be supported on the theory that he who seeks equity must do equity is not applicable to the complainant because the case made by him in his original bill was that wherein a nominal trustee having no interest in the property wrongfully refused to convey the title to the land.

. The theory was upheld by the Chancellor and we, after an examination of the entire record, concur in that view. The defendant by his application for affirmative relief seeks what he terms an equity but fails to show upon his theory that he held an interest in the land and was something more than a naked trustee; that he did equity by keeping an accurate, a clear and distinct account of this disbursement and notified the complainant of the same.

. In this view of the case the decree appealed from is reversed with directions that final decree be now entered in favor of the appellant, C. D. Benbow.

DAVIS, C. J., and TERRELL, J., concur.

. WHITFIELD, P. J., and BUFORD, J., concur in the opinion and judgment.