100 So.2d 407 (1958)
Charlie Frank WILLIAMS, Appellant,
v.
George GROGAN et al., Appellees.
Supreme Court of Florida.
February 14, 1958.
*408 M.H. Jones, Clearwater, for appellant.
Louis C. Deal, Loveland, Earle & Deale, St. Petersburg, for appellees.
THORNAL, Justice.
Appellant Charlie Frank Williams who was plaintiff below seeks reversal of a final decree dismissing his bill of complaint which sought enforcement of an alleged parol agreement by his deceased mother to leave certain property to him and in the alternative to impress a trust on the assets of his mother's estate.
The determining point is the matter of the sufficiency of the evidence to sustain the alleged parol agreement or the alleged trust.
It appears from the record that Charles A. Williams died intestate February 18, 1953 leaving as his sole heirs his widow, Annie M. Williams, and their son appellant Charlie Frank Williams. On December 23, 1953 Annie M. Williams executed a will specifically devising various parcels of real estate to various specific devisees, all of whom were made defendants below, and are now appellees here. The property which she devised constituted a part of the assets of her deceased husband's estate. On January 28, 1954, under circumstances to be related hereafter, Charlie Frank Williams executed and delivered to his mother a deed by which he conveyed to her "All of my right, title and interest in and to the Estate of Charles A. Williams, Dec'd, my father, whether same be real or personal property of whatsoever nature and wheresoever situate." Annie M. Williams died June 28, 1955 leaving the will above mentioned. Complaint in the instant suit was filed August 29, 1955.
By the complaint Charlie Frank Williams alleged an oral agreement with his mother made early in January, 1954. By this agreement, so he alleges, he agreed to convey to his mother all of his interest in the estate of his deceased father in exchange for her promise that at her death she would leave to the appellant the entire estate inherited by them from her deceased husband which had not been disposed of during her lifetime. Charlie Frank alleged further that the will of his mother by which she devised various specific assets to other named beneficiaries was a breach of her alleged agreement to die intestate so that he would inherit all of the estate. He sought specific enforcement of the agreement and in the alternative requested the Chancellor to impress a trust in his favor on all of the assets of his mother's estate. The Chancellor heard the evidence and concluded that the plaintiff Charlie Frank Williams "has failed to meet the burden by offering clear and convincing proof of *409 the allegations in his bill of complaint." At final hearing the bill of complaint was dismissed and the final decree entered accordingly. Reversal of this decree is now sought.
The appellant contends here that the evidence adequately sustained his claim that his mother had made the oral agreement and that her subsequent failure to die intestate was a breach of the agreement which justified specific enforcement thereof.
The appellees, who are the executor and specific devisees under the will of Annie M. Williams, contend that the appellant failed to carry the burden of proof sufficiently to establish the alleged oral agreement.
We mention at the outset that if there was no such oral agreement by the mother as contended by the appellant-son, this record is devoid of any evidence of consideration moving from the mother to the son for the execution of the deed dated January 28, 1954. All parties seem to concede that the mother paid the son nothing of value for the conveyance of his obviously substantial interest in his father's estate unless it be, as the son contends, that she promised to die intestate.
On the matter of the alleged agreement between the mother and the son the evidence was conflicting. The Chancellor heard all of it and he evidently chose to believe the witnesses who testified for the appellees. It was his responsibility to evaluate the credibility of the witnesses and we cannot see that he committed error in concluding that the appellant had failed to establish his position by "clear and convincing proof." We, therefore, find that there was no error in the holding of the Chancellor that the alleged oral agreement should not be specifically enforced.
However, a careful examination of the record leads us to the conclusion that the ultimate decree dismissing the complaint was afflicted with error. In reaching this conclusion we disregard the testimony of witnesses offered by appellant and give full weight and credence to the testimony of the witnesses offered by the appellees.
It will be recalled as pointed out above that absent some such oral promise as contended for by the appellant, there was absolutely no consideration whatever for the execution of the deed by the appellant to his mother. According to the testimony of the late John C. Blocker, who was a highly respected member of the Bar of this Court and attorney for Annie M. Williams, the execution of the deed came about under the circumstances which we now summarize. Mr. Blocker, testifying for the appellees, stated that he had drawn the will of the late Annie M. Williams and was familiar with its contents. He testified that it had come to his attention that appellant Charlie Frank Williams was a "wild" young man, that he was running around the city in a high-priced car keeping company with a woman much older than himself and had caused his mother considerable concern. He stated that Charlie Frank had no public liability insurance coverage on his car. He had appellee Grogan bring Charlie Frank and his mother to his office. Mr. Blocker told him that he was "living too high" and pointed out how his conduct was jeopardizing everything that he had. Mr. Blocker then testified that he told the young man "* * * Why don't you deed your interest to your mother? You know that she is not going to waste it and she will take care of your interest." At this point Charlie Frank Williams agreed to execute the deed. It was drawn then and there in Mr. Blocker's office, signed by the appellant and recorded the same day. During this conversation Annie M. Williams and appellee, George Grogan, were both present. Nothing was said to the appellant about the previously executed will and apparently he did not learn of its execution until after his mother died.
It is undisputed from the record that appellant had abounding confidence in his mother and that he was rather an irresponsible, *410 although well educated young man. He had had no real experience in business and in substantial measure had throughout his life relied on the guidance and advice of his parents. The sum of the situation therefore is that a relationship of trust and confidence existed between the appellant and his mother, that in the light of this relationship and in her presence and pursuant to the recommendation of her attorney, the appellant deeded over to his mother all of his interest in the estate of his late father for no consideration whatever except the assurance that "she will take care of your interest." Instead of doing this the mother died with a will that devised to other people, some not even members of the family, specific property which had been acquired through the estate of her deceased husband, the father of the appellant. It was his interest in this property which appellant conveyed to his mother "to take care of" for him.
It appears to us that although the Chancellor was justified in concluding that the alleged oral agreement to leave all of the estate to the appellant was not sufficiently sustained by proof, nonetheless there was adequate and almost conclusive evidence submitted by the witnesses for the appellees that would show clearly that the mother and ultimately her estate were unjustly enriched to the extent of the property conveyed to her by the deed and traceable into her estate as of the time of her death. To this extent we have the view that equity under the circumstances should construct a trust in favor of the appellant in the assets of his father's estate in which he had an interest and which can be traced by proper accounting into the assets of his mother's estate. Wadlington v. Edwards, Fla. 1957, 92 So.2d 629.
The rule is well established in Florida and elsewhere to the effect that when a person acquires title to property through the influence of a confidential relationship or otherwise obtains an advantage which he should not in good conscience be permitted to retain, a court of equity will prevent the abuse of the confidence and grant relief on the broad principle that one should not be permitted to be unjustly enriched under such circumstances at the expense of another. Benbow v. Benbow, 117 Fla. 37, 157 So. 512; Seestedt v. Southern Laundry, Inc., 149 Fla. 402, 5 So.2d 859.
It is apparent from the record here that the conveyance to the mother was executed by the son because of his abounding and unlimited confidence in his mother and upon her assurance, speaking through her attorney, that she would take care of his interest. Although it may be that the parties did not have in contemplation an express trust as such, it is certainly obvious that the appellant relied upon his mother and had a right to assume that under the circumstances she would not devise his property to third parties. This record sustains the conclusion that the mother and ultimately her estate were unjustly enriched to the extent of the son's interest in property left to him by his father which can be traced into the assets of the mother's estate by virtue of the deed of conveyance. The unjust enrichment arose out of a confidential relationship. Under such circumstances the appellant-son was entitled to relief in the trial court by a decree that would construct a trust in his favor subject to any intervening rights of third parties who might have acquired an interest in any of the property in good faith and for value. The corpus of the constructive trust consists of appellant's interest in the assets of his father's estate which can be traced into the mother's estate. A trust which is created by operation of law is not within the statute of frauds and may be proved by parol evidence. 54 Am.Jur., Trusts, Sec. 191, p. 149.
Incidentally, we mention in passing that the brief of appellant contains no appendix as required by Florida Appellate Rule 3.7f(5), former Supreme Court Rule *411 36(6) (e), 31 F.S.A. We have examined the entire original record in view of the glaring equity in favor of appellant. No motion to strike the brief was filed. If such a motion had been submitted, the brief here would have been subject to the assault.
We think that within the allegations of the complaint and the proof submitted, the appellant was entitled to relief of the nature we have described. It was, therefore, error to dismiss his complaint at final hearing. When the cause goes back before the Chancellor it will be necessary to determine the relative rights of the parties on the basis of a proper accounting of the assets and income from the date of the conveyance of the son to the mother taking into consideration any intervening equities of good faith claimants for value as well as any other equities that might be shown to exist as between the parties to this cause.
The final decree is reversed.
TERRELL, C.J., and THOMAS, HOBSON and DREW, JJ., concur.