# Third District Court of Appeal

## State of Florida

Opinion filed September 21, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1631
Lower Tribunal No. 12-12-P
_____

**John W. Rich, Jr., etc.,**
Appellant,

vs.

**Judith R. Narog, et al.,**
Appellees.

An Appeal from the Circuit Court for Monroe County, Luis Garcia, Judge.

Cummings & Lockwood, LLC, and Michael P. Kaelin (Palm Beach Gardens), for appellant.

Gunster, Yoakley & Stewart, P.A., and Jack J. Aiello, John C. Moran and Justin A. Shifrin (West Palm Beach), for appellees.

Before FERNANDEZ, C.J., and EMAS and SCALES, JJ.

SCALES, J.

Appellant John W. Rich, Jr. ("the personal representative"), as personal representative of the estate of John W. Rich, Sr. ("the decedent"), appeals a July 13, 2021 order granting partial, final summary judgment in favor of appellees Judith R. Narog, Elizabeth R. Whalley and Jane P. Rich Munro (collectively, "the beneficiaries"). The trial court's partial judgment surcharged the personal representative after the personal representative issued payments from the estate's bank account to creditors to satisfy fifteen, alleged personal debts of the decedent; none of these creditors had filed a statement of claim against the estate within two years of the decedent's date of death. See § 733.710(1), Fla. Stat. (2011) (Florida's statute of nonclaim).[1] Because the personal representative's affidavit submitted in opposition to the beneficiaries' summary judgment motion was conclusory and, therefore, not probative, and because the summary judgment record establishes both that (i) these debts were personal to the decedent, and (ii) the personal representative wrongfully paid the debts from the estate's assets without the debts' creditors filing timely claims against the estate as required by Florida's statute of nonclaim, we affirm the challenged judgment in its entirety.

---

[1] Florida's statute of nonclaim provides, in relevant part, that "2 years after the death of a person, neither the decedent's estate, the personal representative, if any, nor the beneficiaries shall be liable for any claim or cause of action against the decedent, whether or not letters of administration have been issued." § 733.710, Fla. Stat. (2011).

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A. The Decedent's Death and Administration of the Decedent's Estate

The decedent died on December 30, 2011. On February 7, 2012, the personal representative (the decedent's son) filed a petition for formal administration of the decedent's estate in the probate division of the Monroe County Circuit Court. Pursuant to section 733.710(1), any creditor with a claim against the decedent's estate had until December 30, 2013, to file the claim. On March 26, 2014, the personal representative filed a verified "Statement Regarding Creditors," wherein he attested that the estate had no known creditors who have or may have claims or demands against the estate.

Over six and a half years later, on November 2, 2020, the personal representative filed a petition for discharge as personal representative of the estate, and also a verified final accounting that detailed the receipts and disbursements of the estate's assets from December 30, 2011 through November 30, 2019. In particular, "Schedule B Disbursement of Principal" of the accounting provided a line-item breakdown of payments from the estate, labeled under subheadings titled as "Debts of Decedent," "Funeral Expenses," "Miscellaneous Administration Expense," "Taxes," "Commissions," and "Fees." As relevant here, under the "Debts of Decedent"

subheading, the personal representative accounted for, among other payments, thirteen payments to different creditors totaling approximately $715,000. Consistent with the subheading's "Debts of Decedent" title, the description for each of these thirteen payments provided that the personal representative had made the payments to creditors for either "Debt of Decedent" or "Payment of Decedent's Debt." Moreover, under the "Miscellaneous Administration Expense" subheading, the personal representative listed a roughly $329,000 payment to a creditor for an "Accounts Receivable Payoff," and also a $1,368,675 payment to himself for "Boat – Repayment of Loan to [Personal Representative] – 2017 Loan" ("the boat loan").[2] The fifteen disbursements totaled approximately $2.41 million.

B. *The Beneficiaries' Objections to the Final Accounting and Motion for Summary Judgment Challenging the Payment of Time-Barred Creditor Claims*

On December 10, 2020, the beneficiaries filed their objections to the petition for discharge and to the final accounting. Therein, among their many

---

[2] The amount of the purported boat loan was actually $1,500,000. According to the final accounting, though, the personal representative arrived at the $1,368,675 payment figure by first subtracting a $131,325 commission related to the sale of the boat. As discussed herein, the personal representative would later reveal in his affidavit that he had brokered the sale of the boat and, therefore, he purportedly deducted the value of his commission from the loan amount to increase the amount of the sale proceeds retained by the estate.

4

objections, the beneficiaries objected to the fifteen payments discussed herein, claiming that the distributions were time-barred by Florida's statute of nonclaim because the respective creditors had failed to file a statement of claim against the estate by December 30, 2013. Indeed, *no* creditor claims had been filed against the estate during the requisite two-year time period. The beneficiaries sought to hold the personal representative personally liable, and surcharge him, for the alleged, errant disbursements based on the personal representative's alleged breach of his fiduciary duties. See § 733.609(1), Fla. Stat. (2011) ("A personal representative's fiduciary duty is the same as the fiduciary duty of a trustee of an express trust, and a personal representative is liable to interested persons for damage or loss resulting from the breach of this duty."); In re Estate of Pearce, 507 So. 2d 729, 731 (Fla. 4th DCA 1987) (recognizing that section 733.609 permits surcharging a personal representative for making unauthorized payments from an estate's bank account); see also §733.710(1), Fla. Stat. (2011); May v. Illinois Nat'l Ins. Co., 771 So. 2d 1143, 1157 (Fla. 2000) ("[S]ection 733.710 is a jurisdictional statute of nonclaim that automatically bars untimely claims and is not subject to waiver or extension in the probate proceedings.").

On December 10, 2020, the beneficiaries filed and served a declaration that the proceedings were adversary.[3] Over a year later, on February 3, 2021, the beneficiaries filed their "Motion for Summary Judgment on Time-Barred Creditor Claims Reflected in Final Accounting." Therein, the beneficiaries again argued that the fifteen payments discussed herein were time-barred by Florida's statute of nonclaim. The beneficiaries argued further that, with respect to the disbursement to the personal representative to satisfy the boat loan, the personal representative had violated Florida Probate Rule 5.490(e)'s notice requirements.[4]

On June 10, 2021, the personal representative filed a memorandum of law opposing the beneficiaries' motion for summary judgment. Therein, the personal representative argued that the boat loan disbursement to himself came from the sale proceeds derived from the boat's sale, and was not made

---

[3] See Fla. Prob. R. 5.025(a) ("The following are adversary proceedings unless otherwise ordered by the court: proceedings to . . . surcharge a personal representative . . . ."); Fla. Prob. R. 5.025(d)(2) ("After service of formal notice, the proceedings, as nearly as practicable, must be conducted similar to suits of a civil nature, including entry of defaults. The Florida Rules of Civil Procedure govern, except for rule 1.525.").

[4] Rule 5.490(e) provides, in relevant part, that "[i]f the personal representative files a claim individually, or in any other capacity creating a conflict of interest between the personal representative and any interested person, then at the time the claim is filed, the personal representative shall serve all interested persons with a copy of the claim and notice of the right to object to the claim."

to satisfy "a claim . . . against the decedent" within the meaning of section 733.710. According to the personal representative, the decedent's wholly-owned corporation, and not the decedent, owed the debt. To support this allegation, the personal representative filed an affidavit in opposition to the beneficiaries' summary judgment motion, which explained as follows:

9. The $1,500,000 payment [the beneficiaries] refer to as being paid to me . . . was not paid to me in satisfaction of a claim I made against [the decedent] within the meaning of § 733.710. The actual payment was $1,368,675 and it was paid to me from an offshore company that was owned by [the decedent] at the time of his death to repay a loan I made to the offshore company to purchase a yacht after the yacht was sold.

10. More specifically, on the date of [the decedent's death], he owned 100 percent of the shares of Business Offshore, Ltd. ("BOL"), a British Virgin Islands Corporation. On April 6, 2009, I loaned BOL $1,500,000.

11. [The decedent's] interest in BOL was valued following an Internal Revenue Service examination at a net value of $2,059,602.

12. The net value of BOL was calculated as follows:

Gross value of yacht:                                     $3,559,602
Less debt owed to [the personal representative] ($1,500,00)
                                                      Net $2,059,602

13. The yacht, which was owned by BOL, was sold in June 2014. The actual payment to me was $1,368,675 after subtracting the after tax value of the commission I received for serving as the personal representative of [the decedent's] estate. This was not something that I was legally obligated to do, but did as an accommodation to increase the value of the estate's interest in BOL.

7

14. Because BOL did not have its own bank account at the time the yacht was sold, the proceeds of the sale were deposited in [the decedent's] estate account. After the sale of the yacht, the $1,368,675 BOL owed to me was paid from the estate account in which the proceeds of the sale of the yacht were deposited out of the proceeds of the sale of the yacht, which was owned by BOL. Therefore, this was not a debt paid to me from [the decedent's] estate, but rather a debt paid to me from BOL's assets in repayment of a loan I made to it, not [the decedent].

As to the remaining fourteen payments to other creditors discussed herein, the personal representative's memorandum of law argued that the payments were also not made to satisfy "a claim . . . against the decedent" within the meaning of section 733.710, because, somehow, they were "in rem claims against corporate interests organized and operated outside the State of Florida." With respect to these disbursements, the personal representative's affidavit avowed that "each of the debts were owed to the companies in which [the decedent] had an ownership interest, which would have been reduced had I not paid the debts from the assets of [the decedent's] estate."[5]

---

[5] As noted, the final accounting listed the "Accounts Receivable Payoff" disbursement for roughly $329,000 under the "Miscellaneous Administration Expense" subheading, rather than the "Disbursement of Principal" subheading. Nevertheless, the personal representative's affidavit attests that "the character of [this] debt" was the same as the subject debts listed under the "Disbursement of Principal" subheading.

8

## C. The Summary Judgment Hearing and Entry of the Challenged Partial Judgment

The trial court conducted a hearing on the beneficiaries' summary judgment motion on June 30, 2021. At the hearing, the beneficiaries' counsel argued that, under the new summary judgment standard that became effective on May 1, 2021,[6] the personal representative's affidavit was insufficient to create a genuine issue of material fact to preclude entry of summary judgment in their favor. At the conclusion of the hearing, the trial court agreed with the beneficiaries.

On July 13, 2022, the trial court entered the challenged order granting partial, final summary judgment in favor of the beneficiaries, finding that all fifteen debts were personal to the decedent and that the personal representative wrongfully paid the debts from the estate's assets because the debts' creditors did not timely file a claim as required by Florida's statute of nonclaim. Additionally, with respect to the disbursement to the personal representative for the boat loan, the court found that the personal representative had violated rule 5.490(e)'s notice requirements. Based on these findings, the trial court surcharged the personal representative

---

[6] See In re Amendments to Fla. Rule of Civil Procedure 1.510, 309 So. 3d 192, 195 (Fla. 2020).

9

approximately $2.54 million for the alleged wrongfully paid debts.[7] The personal representative timely appealed the challenged order.

## II. ANALYSIS[8]

The issue we must decide is whether, under the new summary judgment standard, the personal representative's affidavit is legally sufficient to create a genuine issue of material fact as to (i) whether the boat loan was a liability of the decedent or, as the personal representative asserts, a liability of the decedent's wholly-owned corporation, and (ii) whether estate assets were used to repay the loan.[9] If the boat loan was a debt of the decedent

---

[7] It appears the trial court surcharged the personal representative for both the boat loan repayment and the $131,325 commission related to the sale of the boat.

[8] "An appellate court reviews *de novo* the trial court's ruling on a motion for summary judgment." Simmons v. Pub. Health Tr. of Miami-Dade Cnty., 338 So. 3d 1057, 1060 (Fla. 3d DCA 2022).

[9] We affirm the partial, final summary judgment as to the fourteen other challenged disbursements because the personal representative's final accounting, as confirmed by the personal representative's affidavit, establishes that these disbursements were made to satisfy personal debts of the decedent, and the personal representative's affidavit provides no rational explanation to the contrary. See § 733.609(1), Fla. Stat. (2011); § 733.710(1), Fla. Stat. (2011).

At oral argument, the personal representative's appellate counsel suggested that the beneficiaries are unjustly enriched by the partial summary judgment because, in making the subject disbursements to satisfy the decedent's debts to the respective corporate creditors, the personal representative ensured that the estate's ownership interest in the

10

and estate assets were used to repay the loan, then the surcharge was proper because the personal representative failed both to (i) file a timely, written statement of claim against the estate, see § 733.703(1), Fla. Stat. (2011); § 733.710(1), Fla. Stat. (2011); Fla. Prob. R. 5.490(a), and (ii) notify interested parties that he had a claim against the estate. See Fla. Prob. R. 5.490(e). In the alternative, if the boat loan was a liability of the decedent's corporation – an entity separate and distinct from the decedent's estate[10] – and no estate assets were used to repay the loan, then the surcharge would be improper because the personal representative's compliance with either the Probate Code or rule 5.490(e) would not have been required. See Gettinger v. Gettinger, 165 So. 2d 757, 757 (Fla. 1964) ("[T]he affairs of a corporation, even though substantially owned by a decedent, cannot be administered by decedent's executor as assets of the decedent's estate.");

---

corporations was not reduced and that the beneficiaries received the full value of the shares. Because the issue is not before us, we express no opinion as to whether the beneficiaries have been unjustly enriched by virtue of the surcharge, or whether the personal representative can maintain a separate cause of action against the beneficiaries for unjust enrichment.

[10] See In re Estate of Gettinger, 157 So. 2d 692, 694 (Fla. 3d DCA 1963), cert. dismissed, 165 So. 2d 757 (Fla. 1964) ("Every corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders." (quoting Advertects, Inc. v. Sawyer Indus., 84 So. 2d 21, 23 (Fla. 1955))).

BankAtlantic v. Estate of Glazer, 61 So. 3d 1222, 1223 (Fla. 3d DCA 2011) (recognizing that upon the death of a decedent who owns 100% of an entity, "the stock of the [entity] is an asset of the Estate, but the funds of the [entity] are a step removed from the Estate").

We recognize that, in all likelihood, under Florida's former summary judgment standard, the affidavit would have been sufficient to create a genuine issue of fact, thus precluding the entry of summary judgment. See Piedra v. City of N. Bay Vill., 193 So. 3d 48, 51 (Fla. 3d DCA 2016) ("If the record on appeal reveals the merest possibility of genuine issues of material fact, or even the slightest doubt in this respect, the summary judgment must be reversed."). Florida's new standard, however, placed a higher burden on the personal representative, one that the personal representative's affidavit did not meet.

*A. Florida's New Summary Judgment Standard*

"In Florida it will no longer be plausible to maintain that 'the existence of *any* competent evidence creating an issue of fact, however credible or incredible, substantial or trivial, stops the inquiry and precludes summary judgment, so long as the 'slightest doubt' is raised.'" In re Amendments to Fla. Rule of Civil Procedure 1.510, 317 So. 3d 72, 76 (Fla. 2021) (quoting Bruce J. Berman & Peter D. Webster, Berman's Florida Civil Procedure §

12

1.510:5 (2020 ed.)). Under the federal summary judgment standard that is now applicable in Florida's state courts,[11] where, as here, the nonmoving party bears the burden of proof on a dispositive issue at trial,[12] the moving party need only demonstrate "that there is an absence of evidence to support the nonmoving party's case." See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fla. R. Civ. P. 1.510(c)(1)(B) (providing that the party moving for summary judgment may support the assertion that a fact cannot be disputed by "showing . . . that an adverse party cannot produce admissible evidence to support the fact").

Under the new standard, once the moving party satisfies this initial burden, the burden then shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Specifically, it is incumbent upon the nonmoving

---

[11] See Fla. R. Civ. P. 1.510(a) ("The summary judgment standard provided for in this rule shall be construed and applied in accordance with the federal summary judgment standard.").

[12] As outlined in more detail below, with regard to the boat loan, at trial, the personal representative would have the burden to overcome the presumption that estate assets were improperly used to pay a debt of the decedent. We express no opinion as to whether the personal representative's affidavit would have been sufficient if the beneficiaries, rather than the personal representative, would have borne the burden of proof at trial.

party to come forward with evidentiary material demonstrating that a genuine issue of fact exists as to an element necessary for the non-movant to prevail at trial. Id. at 324; See Fla. R. Civ. P. 1.510(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"). Importantly, though, "[i]f the evidence [presented by the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." In re Amendments to Fla. Rule of Civil Procedure 1.510, 309 So. 3d 192, 193 (Fla. 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The trial court, therefore, must determine – as is the case with a motion for a directed verdict – whether the nonmovant's "evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. That is to say, the nonmovant's evidence must be of sufficient weight and quality that "reasonable jurors could find by a preponderance of the evidence that [the nonmovant] is entitled to a verdict." Id. at 252. "Where

14

the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

*B. Application of Florida's New Summary Judgment Standard to this Case*

The personal representative faces a daunting task here because (i) the personal representative's final accounting, which is part of the summary judgment record, evidences that the personal representative repaid the boat loan from estate assets, and (ii) accepting all the allegations of the personal representative's affidavit as true, the personal representative concedes that he intentionally commingled estate assets with non-estate assets by depositing the boat sales proceeds into the estate's bank account. Hence, because the personal representative did not file a creditor claim nor comply with rule 5.490(e), a presumption arises that surcharging the personal representative for the boat loan payment is proper, with the personal representative bearing the burden of proof at trial to establish that no surcharge is warranted. <u>See</u> <u>Beck v. Beck</u>, 383 So. 2d 268, 271 (Fla. 3d DCA 1980) (recognizing that a personal representative's admitted misadministration of an estate "invoke[s] the presumption applicable to a trustee of an express trust and shift[s] the burden of going forward with the

15

evidence to the personal representative . . . [and] '[t]he burden of proof is upon [the personal representative] to show that the money expended was a proper disbursement.'" (quoting Benbow v. Benbow, 157 So. 512, 519 (Fla. 1934))).

Hence, in opposing the beneficiaries' summary judgment motion, the personal representative had the burden to overcome the presumption by establishing, with evidence of sufficient weight and quality, that a reasonable fact-finder could conclude both that (i) the boat loan was not a liability of the decedent, and (ii) estate assets were not used to repay the loan. Id.; Celotex Corp., 477 U.S. at 322-24; Fla. R. Civ. P. 1.510(c)(1)(A).

Other than the personal representative's self-serving affidavit, though, there is no summary judgment evidence supporting the personal representative's bald assertions contained therein that he made the boat loan to the decedent's wholly-owned corporation, and that no estate assets were actually used to repay the personal representative for the boat loan. The personal representative claims that, because the corporation had no bank account, the sales proceeds from the boat's sale to a third-party buyer were deposited into, and the loan was then repaid from, the estate's bank account. But no documents or other evidence that would normally substantiate such assertions – a promissory note or corporate minutes

16

evidencing the personal representative's loan to the decedent's corporation, documents evidencing the corporation's purchase of the boat, a sales contract for the sale of the boat to the buyer, a check or other proof of payment from the boat's buyer, bank records evidencing a deposit of boat sales proceeds into the estate's account, a bill of sale evidencing either the corporation's purchase of the boat or the corporation's sale to the buyer, vessel registration documents, etcetera – are appended to the personal representative's affidavit. Nor does the personal representative's affidavit provide any explanation for the absence of any such memorialization documents. Similarly, the personal representative's affidavit does not describe the terms of the personal representative's loan to the corporation, the identity of the boat's buyer, the precise date of the boat's sale from the corporation to the buyer, when the sales proceeds were received by the corporation, when the sales proceeds were deposited into the estate account, or any other "specific, discrete facts of the who, what, when, and where variety" that give the personal representative's affidavit the type of probative value necessary to defeat the beneficiaries' motion for summary judgment. Rhiner v. Sec'y, Fla. Dep't of Corr., 817 Fed. Appx. 769, 774 (11th Cir. 2020) (quoting Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013)).

17

Because the personal representative submitted only an affidavit in opposition to the beneficiaries' motion for summary judgment, his affidavit must "set[] forth specific facts to show why there is an issue for trial." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (quoting Gossett v. Du-Ra-Kel Corp., 569 F.2d 869, 872 (5th Cir. 1978)). While the personal representative's affidavit includes some specifics explaining what the personal representative allegedly did and why he did it, the affidavit's lack of specificity regarding the critical details related to (i) the personal representative's alleged loan to the decedent's corporation, (ii) the corporation's alleged purchase of the boat with the loan proceeds, (iii) the corporation's alleged sale of the boat to the third-party buyer, and (iv) the personal representative's alleged deposit of boat sales proceeds into the estate account, render the personal representative's affidavit conclusory. Under Florida's new summary judgment standard, the affidavit is insufficient to create a triable issue of fact. Id. (recognizing that "conclusory allegations without specific supporting facts have no probative value" (quoting Evers v. Gen. Motors Corp., 770 F. 2d 984, 986 (11th Cir. 1985))).

In sum, the summary judgment record, taken as a whole, is devoid of critical, significantly probative details that would allow a reasonable fact-finder to conclude both that (i) the boat loan was an obligation of the

18

decedent's wholly-owned corporation, rather than of the decedent, and (ii) no estate assets were used to repay the boat loan, so as to overcome the presumption established by the summary judgment evidence that the surcharge was proper. We, therefore, affirm the trial court's summary judgment surcharging the personal representative for the repayment of the boat loan.

Affirmed.