IN THE MATTER OF THE GUARDIANSHIP OF SHERMAN E. NUSBAUM, non compos mentis; SHERMAN E. NUSBAUM, non compos mentis, by GENERAL FRANK T. HIMES, Administrator of Veterans' Affairs Etc., et al., v. CHARLES NUSBAUM.

16 So. (2nd) 519                                    January Term, 1944
February 4, 1944                                              Division B

*George W. Burke, Edward E. Odom,* and *D. B. White,* for appellant.

*Alfred A. Green* and *Roger H. West,* for appellee.

THOMAS, J.:

In an opinion filed December 4, 1942, we held that two investments of the funds of the ward by the guardian, appellee, in the respective sums of $1,234.12 and $150.00 were improper, and we directed the circuit court, which originally heard the appeal from the order of the county judge's court overruling exceptions to the accounting, to reverse the order and direct disallowance of these items.

In obedience to the mandate the county judge ordered these amounts charged against the guardian, after certain undisputed credits not necessary to detail had been allowed, and required the payment of interest at 4% per annum from July 7, 1939, the date the exceptions were filed. Again the matter was reviewed by the circuit court where the charge for simple interest at this rate was approved, but the date from which it should be computed was changed to the day

when the unlawful investment was made of the larger sum, and the day the smaller sum was used to discount a mortgage. Representatives of the ward have appealed from that judgment. While no point is made of the revision in the period of calculation, they insist that (1) the interest should be paid at the rate of 8% and that (2) it should be compound instead of simple.

It is the contention of appellants that ample authority for surcharging the guardian with interest at 8% may be found in Sec. 4849 R.G.S. 1920 (Sec. 687.01, Florida Statutes 1941, F.S.A. Sec. 687.01), in effect at the time, providing that interest accruing in the absence of special contract shall be allowed in that amount.

Before proceeding to a study of the factual situation we will refer to the only other statute cited by the appellant and the only law, is addition to them, discussed by the appellee. The former has drawn our attention to Sec. 3973 R.G.S. 1920 (Sec. 744.10 Florida Statutes 1941, F.S.A. Sec. 744.10). Briefly this law provides that a guardian may with "leave of the court" retain funds paying lawful interest or under direction of the court may "put out the money" on mortgage security, United States bonds, or state bonds. In the absence of fraud or bad faith loss from insufficiency of the security must be suffered by the ward. If no security can be found the guardian is responsible only for principal. Appropriateness of this statute is challenged by the adversary on the grounds that the facts in the present case are essentially different from any contemplated by the act and that the law was intended for the protection of estates of infants while the estate involved in this controversy was that of a person non compos mentis. Soundness of the latter position does not appeal to us, for in Sec. 3991 R.G.S. 1920 (Sec. 744.24, Florida Statutes 1941, F.S.A. Sec. 744.24) giving county judges power to appoint guardians for lunatics it is provided that the guardians "shall have and exercise the same powers and duties over and concerning the . . . property of such insane persons . . . as may be by law had and exercised by the guardians of infants, and the county judges shall have and exercise the same powers touching such guardians

and the property of such insane persons . . . as may be by law had and exercised touching the guardians and the property of infants."

The appellee has cited Chapter 14,579, Laws of Florida, Acts of 1929, relating to the guardianship of incompetent veterans, but there is no need to dwell upon it because we quite readily agree with his statement that it is no aid to the questions with which we are dealing. We mention this law only for the purpose of emphasizing that but two statutes pertinent to this controversy, Secs. 4849 and 3973, supra, seem not to be eliminated.

The solution to the problem confronting us may not be found in the simple language of Sec. 4849, supra, as appellant so earnestly contends, but it is necessary to explore the underlying reasons for requiring the guardian to pay, not only principal but interest, where there has been an unauthorized investment, or an irregular management, of the estate of his ward.

Certain features of the transaction we held unauthorized should be borne in mind as we discuss the contentions of the parties the effect of the statutes, and the responsibilities and obligations of a person who assumes a position such as the one held by the appellee. He bought a lot for the ward at the purchase price of $3,000.00. The property was subject to a mortgage $750.00, and the remainder of the purchase price, $2,250.00 was paid from funds of the estate in the amount of $1234.12 and proceeds of a loan from him to the estate approximating $1,000.00, for which he took a note. Within the year the guardian paid himself on the loan $300.00, reducing the indebtedness to $700.00. Many years later the mortgage was paid and discharged from $200.00, $150.00 of that amount having been taken from the estate and an additional loan of $50.00 having been made by the guardian.

The record in the original case, by stipulation made a part of the one in this appeal, discloses that the guardian consulted the county judge informally about the purchase and later advised him, also informally, of the payments he was making to himself on the loan. In a hearing on the

exceptions to the guardian's accounting he testified that he had torn "the name off the bottom of the note so, if anything happened [to him], there would be no note against the estate, because [he] figured it would be a personal loss of $700" and, further, that he did not consider the balance in this amount "owed."

The purchase was unauthorized—we have so held—but these circumstances are in a sense extenuating and affect the decision on the present controversy, as we expect to demonstrate. When the details of this transaction are examined in the light of Sec. 3973, supra, the inapplicability of its provisions is immediately apparent. The money of the ward was not retained by the guardian for the use of which the latter became responsible for interest; it was not "put out" upon security of any kind. On the contrary, it was invested in real estate taken and held in the name of the ward. In no event could the guardian have profited except by the interest on the amount he advanced which was added to the funds withdrawn from the estate in order to make the purchase. It is impossible for us to determine that the unauthorized investment could be considered a "retention" by the guardian, unwise though the investment may have been. This unwisdom was magnified by the collapse of the boom, and it may be said in passing that it was not peculiar to the guardian, for numbers of men of business acumen erred in the same fashion. Had the investment yielded great profit the guardian would not have participated in it. The ward stands to lose nothing because it has already been decided that his principal should remain intact.

The basic question is the liability of the guardian for the interest on the investment which resulted more from carelessness than from deliberateness.

The purpose of requiring the repayment by the guardian is to make whole the ward's estate, and it is prompted by the ever present zeal of the courts to protect those who are unable by affliction to fend for themselves. As to principal, there is no dispute now that it has been repaid. As to interest, why should the award be paid 8% under the statute, Sec. 4849, supra, if his investment could have earned but

one half that amount had the guardian acted with propriety? To state it otherwise, why should he profit more by this impropriety than he would have gained had his representative performed his duties with punctiliousness? The only solution which suggests itself is that the guardian should repay the original estate for the principal and such interest as would have been earned from a properly authorized investment. If he is required to do more it would be the equivalent of penalizing him in the bargain.

The circuit judge found that the guardian should be charged with interest at 4% "for the reason that this was the highest sum of money which, if the sums had been properly invested, could have been obtained by the Guardian." He cited as authority Sec. 207, Vol. I, Restatement of the Law of Trusts as promulgated by American Law Institute.

Substance of this exposition is that a trustee, in event of breach of his trust, is charged with interest at the legal rate or such rate as the court shall fix, depending on the circumstances "but in any event . . . with interest . . . received . . . or which he should have received." It is patent to us that the claim against appellee fell within the latter classification.

The legal rate would have had no influence upon fixing interest actually received by the guardian, for if he had received more than the legal rate he would be responsible for the larger amount. The same rule applies to interest which should have been received, but, by the same token, if the interest he should have received by properly complying with the law was less than the legal rate the statute should not be imposed. It may be presumed from the orders of the county and circuit judges that no more than 4% could have been earned in a proper investment, therefore, those courts were authorized to establish that rate.

If this was his duty under Sec. 3973, supra, and he failed to invest the estate in the securities authorized he was properly chargeable with the interest which could have been earned on the approved securities. Further referring to the above pronouncement if the breach consisted "only in the failure . . . to invest trust money . . . [he] is chargeable with

interest at the current rate of return on trust investments and not for interest at the legal rate." The comment, however, which seems more nearly to fit the matter here involved is that if the breach consists in an improper purchase of property interest should be charged at the "current rate of return on trust investments, unless the breach . . . was intentionally committed," in which case interest "is ordinarily chargeable . . . at the legal rate."

From our study and analysis of the records, briefs, and authorities we are convinced that the true line of demarkation between those cases in which the legal rate should be imposed and those where the rate should be measured by the market for trust securities may be defined largely, if not entirely by the conduct of the guardian. Had appellee deliberately and intentionally breached his trust the legal rate would have, therefore, applied and the court would have invoked the provisions of Sec. 4849, supra, by which that rate is determined. However, from the nature of the purchase already described we think his breach may not be attributed to an intentional misdeed. It resulted more from a failure to comply with technical requirements, and it seems to us that the rule in the restatement of the law should be invoked and that he should be compelled to pay no more than securities properly purchased would have yielded had he bought them instead of real estate. Both the county judge and the judge of the circuit court found 4% to be fair interest charge, and the latter specified that this was the amount the investment would have earned on sums properly invested. We are conscious of no reason for disturbing the conclusion.

This brings us to the other aspect of the case, namely, whether the interest should be compound or simple. From the authority relied upon by the circuit judge, which we approve, it seems that the trustee (guardian) is chargeable with simple interest unless he has received compound interest, has received an unascertainable profit, or "it was his duty to accumulate the income." The only statute cited us referring to accumulated income yearly and justifying compound interest is the latter portion of Sec. 3973, supra. Assuming again its applicability, because of the language of Sec. 3991,

we still find in it no authority to warrant interference with the circuit judge's order. Gist of this feature of the act is that the day of payment of money loaned on private security should not be later than a year "from the date of the obligation or other security given for the same"; that at the end of each year the interest due, if not paid, should become principal; and that when the guardian retains the money the interest must be added to the principal annually.

The money was not retained, and we cannot decide from the record that private loans could have been made bringing the other provisions into play.

A close study of the entire case makes us firm in the belief that the circuit judge was correct when he adjudged appellee responsible for simple interest at 4% on the theory that any securities which might have been purchased would have yielded no more; that there was no such misconduct on the part of the guardian as would have warranted penalizing him by forcing him to pay 8%, or statute or circumstance justifying the requirement that the interest be compound.

We conclude the circuit judge decided the case in accordance with the law and justice and that, therefore, his judgment should be—

Affirmed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.