MATHEWS, Justice.
In this case John S. Anderson owned a farm, which he acquired in 1940. He built a house on the property the same year and lived in it until he went into the Army. In 1945, after his discharge from the Army, he was placed in the Veterans Administration Hospital at Augusta, Georgia. John H. Anderson, his father, was appointed Guardian by the County Judge in April, 1949. The Guardian received a considerable sum of money for his ward from the Government. After the father was appointed Guardian, he made an oral application to the Court to spend some of the guardianship funds in improving his son’s farm. The County Judge orally authorized the expenditures for the purpose of improving the farm. The Guardian proceeded to make certain expenditures, as orally authorized, and thereafter filed his first annual accounting for the period of time from April 6, 1949 to June 2, 1951. This accounting showed in detail the amount of money he had received and also the disbursements, which included disbursements for having stumps pulled, having the farm bulldozed, having the farm wired for electricity, putting up a fence, state and county taxes, materials and labor for a to *791 bacco bam, and other small items; such as, fence posts and building materials. The total expenditures amounted to $2,751.50, and included an electric refrigerator, which the Guardian testified he had purchased and was using until his son came home. The Administrator of Veterans Affairs filed objections to this accounting or report and ■hearings were had before the County Judge on August 3, 1951 and July 9, 1952 with respect to the first and second annual ac-countings. The County Judge overruled all objections to the expenditures made by the Guardian except funds expended for the electric refrigerator, together, with interest at six percent per annum.
The order of the County Judge contained the following:
“ * * * At the time the guardian was appointed, his son, the ward, owned a farm in Suwannee County, Florida, on which there were taxes due. After Mr. Anderson was appointed guardian, he obtained some money from the Veterans Administration due to the fact that his son, the ward, had been in the Army and was disabled, and the disability was service connected. Since the time of the appointment, the ward has been in the Veterans Hospital at Augusta,. Georgia. Sometime in 1949, after Mr. Anderson had been appointed guardian, he made an oral application to the Court to spend some of the guardianship funds on improving his son’s farm. The Court informally authorized the expenditure by the guardian for the purpose of improving the ward’s farm. It was expected then that, when the improvements had been made, a petition would be filed' and the Court would examine the expenditures and, if they were in order, and as represented by the Guardian,-they would be approved

“After the guardian filed his report for the period from April 6, 1949, to June 2, 1951, he also filed a petition on June 29, 1951, asking for an order approving these expenditures. Oh July 26, 1951, the Veterans Administration filed objections to all these expenditures. Testimony was taken on the objections on August 3, 1951, and further testimony on July 9, 1952.
“ * * * While it might, have been preferable, before permitting the guardian to make any improvements on the ward’s property, to require a petition and an order, it does appear that the improvements made were very beneficial to the farm, and certainly have not decreased the value of the ward’s property, but, on the other hand, appear to have enhanced it, consequently it does not appear that the guardian is guilty of waste or unlawful expenditure or falsification of his report. * * *
* * * * * *
“The Court is of the opinion that the objections of the Veterans Administration have not been sustained, except as to the purchase by the guardian of an electric ice box for the sum of $272.74. The Court is of the opinion that this purchase was unauthorized and the guardian is hereby directed to reimburse the estate in the .sum of $272.74, with interest thereon at the rate of six per cent per annum from June 2, 1951; and all other objections be and the same are hereby overruled. The said guardianship report covering the period from April 6, 1949, to June 2, 1951, is hereby approved, except for the purchase of the ice box.”
The Administrator for Veterans Affairs appealed to the Circuit Court from the order of the County Judge. After reviewing the order of the County Judge, the Circuit Judge affirmed the action of the County Judge and stated:
“The County Judge found that, by reason of these expenditures, there was no loss to the estate, but, to the contrary, it' appeared that the expenditures enhanced the value of the- property *792 and that the Guardian was not guilty of any waste, unlawful expenditures, or falsification of his report, as had been alleged in the objections.
“After a thorough review of the record and the briefs filed by counsel for the respective parties, this Court finds, and it is the holding of this Court that, unless it be established that there is some loss to the estate of the ward by reason of the expenditures of money by the Guardian of the ward, there is no room for complaint or for order surcharging the estate or falsifying the Guardian’s account. This Court finds that the testimony and evidence in the record, as taken by the County Judge, was sufficient to warrant the County Judge in finding that there had been no loss to the estate, although it would have been better for. the Guardian to have requested the Court for an order allowing expenditures for such items as stumping the land and building tobacco barn; yet, if there is no loss to the estate, there is no reason to charge the Guardian with a loss.”
The action of the Administrator of Veterans Affairs in attempting to protect the interest of incompetents is to be commended. It is always advisable for Guardians of wards to comply with statutory requirements. When a Guardian fails to comply with the law and such failure results in loss or damage to the ward, the Guardian is liable. In this case it appears that the Guardian did not actually receive written orders for the expenditures in question before the expenditures were made, but it does appear that he discussed the same with the County Judge, made oral application to the County Judge and the County Judge told him to proceed and file his receipts and accounts later. No damage resulted to the ward or to his estate. It appears that from the expenditures made, the estate of the ward was actually increased in value. Strictly speaking, it was error to make the expenditures without a written order but in this case the error was a harmless one and the expenditures have been approved by. the County Judge and affirmed by the Circuit Judge.
No reversible error has been made to appear and the order appealed from be, arid the same is hereby,
Affirmed.
ROBERTS, C. J., and TERRELL and SEBRING, JJ., concur.