WHATLEY, Judge.
The appellant, Lawyers Surety Corporation, challenges an order surcharging damages against it and the guardian, John Losle-ben. We reverse.
After a hearing on December 22, 1989, the trial court appointed John Losleben as emergency temporary guardian of Charles Wintergreen and appointed Dennis Avery as Wintergreen’s attorney. The trial court directed Avery to talk with Charles Wintergreen and then present the court with an order for withdrawal of funds sufficient to pay Wintergreen’s expenses for thirty days. The trial court stated that the funds should cover expenses for medical costs, nursing costs, medication, and operation of the home. No order for withdrawal of funds was submitted to the trial court.
Pursuant to a hearing on February 19, 1990, the trial court found that a limited guardianship would be appropriate. Losle-ben was appointed guardian. After the hearing, it was agreed that Lillian Wintergreen, the wife of the ward, needed $3,000 per month for the medical care and living expenses of her husband. No one objected to the payment.
After the death of Charles Wintergreen on July 17, 1990, the personal representative of his estate, Joanne C. Saltz, filed a second-amended petition for surcharge against Los-leben and Lawyers Surety. Saltz claimed that Losleben caused $24,000 to be paid from Charles Wintergreen’s Dean Witter account to Lillian Wintergreen without prior trial *1153 court approval, without requiring an accounting of the expenditures, and without verifying that the expenditures were made on behalf of Charles Wintergreen. Lawyers Surety counterclaimed for $1,200 in unpaid premiums on the bond. It also cross-claimed against Losleben for the unpaid bond premium and for contractual indemnity.
A nonjury trial was held on December 13, 1993. Losleben testified that he withdrew $3,000 per month for eight months from a Dean Witter account belonging to Charles Wintergreen. He gave the money to Lillian Wintergreen. He testified that the $24,000 was used to pay for the care of Charles Wintergreen. The payments were placed into the Wintergreens’ joint checking account. Losleben admitted that Lillian Wintergreen wrote checks from this account to pay for her physician’s bills, her prescriptions, and her life insurance. However, the joint checking account contained a significant amount of money before Losleben was appointed guardian.
The trial court found that at the hearing on December 22, 1989 it had authorized emergency payment by Losleben on behalf of Charles Wintergreen to stabilize his living situation until Losleben and Avery had an opportunity to fully assess the extent of assets, obligations, and best interests of Charles Wintergreen. The trial court further found that Losleben had an obligation after the first month to inquire into the wife’s income, assets, expenses, the existence of a prenuptial agreement, or any other factor which may have had a bearing upon the husband’s obligation to provide support or pay monies on behalf of the wife.
The trial court noted that Losleben had sufficient opportunity to seek an order ratifying the disbursements prior to the end of the first month or to seek an order approving future disbursements throughout the duration of the husband’s incapacity. The trial court further noted that Losleben failed to require an adequate accounting of the expenditures.
The purpose of entering a surcharge against a guardian is to make whole the ward’s estate. In re Nusbaum’s Guardianship, 154 Fla. 49, 16 So.2d 519 (1944); In re Estate of Pearce, 507 So.2d 729 (Fla. 4th DCA 1987). In In re Guardianship of Anderson, 75 So.2d 790 (Fla.1954), the guardian failed to obtain a court order for the expenditures in question before the expenditures were made. The court stated, “When a Guardian fails to comply with the law and such failure results in a loss or damage to the ward, the Guardian is liable.” 75 So.2d at 792. In that ease, no damages were assessed because the failure of the guardian did not result in damages to the estate.
In the present case, there was no evidence that Lillian Wintergreen did not use the $24,000 to pay for the medical bills and living expenses of her husband. Although Losleben failed to obtain prior trial court approval for the expenditures, Saltz failed to prove that such failure resulted in damages to the estate. Consequently, there appears to be no basis for the $24,000 damage amount surcharged against Lawyers Surety and Losleben.
Accordingly, we reverse the order of surcharge and direct that Saltz’s second-amended petition for surcharge be dismissed. We further order that a judgment for the unpaid bond premium due to Lawyers Surety Corporation in the amount of $1,200 be entered against the Estate of Charles Wintergreen.
DANAHY, A.C.J., and ALTENBERND, J., concur.