MARCUS CONANT v. J. HENRY BLOUNT, as Executor of and
Trustee Under the Last Will and Testament of MARCUS
CONANT, Deceased.

192 So. 481
Division A
Opinion Filed December 8, 1939

*Martin H. Long* and *Judson Freeman,* for Appellant;

*Stockton, Ulmer & Murchison, Herman Ulmer, Blount & Jones, W. D. Jones, Jr., Milam, McIlvaine & Milam, E. T. McIlvaine,* for Appellee.

THOMAS, J.—Marcus Conant died in the year 1926 leaving a last will in which his wife and J. Henry Blount, a member of the Jacksonville bar, were named executrix and executor. Testator's wife preceded him in death and two children, a daughter and a son, survived. The son, to whom we will refer as the appellant, filed a bill of complaint against the executor, hereinafter called appellee, charging him with mismanagement of the estate, failure to perform the duties of his trust, refusal to account, sale of property without sanction of the court and continuance of testators business without authority.

Relief prayed was accounting and reimbursement of the estate for losses occasioned by appellees misconduct.

A comprehensive answer brought to issue the allegations of the original pleading and after a hearing before the chancellor he rendered a final decree approving in certain terms and unequivocal language the conduct by appellee of the affairs of the estate.

At the outset of the final hearing the appellee, on the theory that the burden rested upon him to make an accounting, offered in evidence ten annual returns and a final report together with orders of approval signed by the county judge. Then followed in the record the simple statement under oath by appellant that he was the sole legatee of the estate. At this point appellant's counsel announced to the chancellor that there was but one question involved: the propriety of appellee's action in forming a corporation to take over part of the assets of the estate without judicial sanction, in other words, to quote counsel: "If, as a matter of law, he was justified in doing that, there is no case against him, and if he was not justified, there is."

Then it was that the appellee proceeded to give a history of the affairs of the deceased and narrate his management of the estate. Testator had for many years immediately prior to his death engaged in the undertaking business in Jacksonville under the trade name "Marcus Conant Company" during which time he accumulated assets approximating eighty thousand dollars. Of this amount about seventeen thousand dollars represented caskets, shrouds, automobiles, furniture and fixtures peculiar to his occupation. The real estate on which the establishment was located was heavily mortgaged and appellee sought to devise some plan to defray the expense of carrying the loan. He desired, too, to preserve the business until appellant reached the age to continue as successor to his father. One A. W. Ruus, who had been in the employ of testator for many years and who enjoyed his employer's confidence, offered to purchase a half interest and to that end a corporation was organized, named Marcus Conant Company, with three hundred shares of capital stock and thirty thousand dollars par value. Ruus became the holder of one hundred forty-nine shares and

appellee one hundred fifty-one. Ruus delivered to appellee a note for fifteen thousand dollars, payable two hundred dollars monthly, in payment for the stock which became collateral for the note. The assets of seventeen thousand dollars value were conveyed to the corporation. Ruus operated the business from the time of incorporation until it went into bankruptcy in 1932. For about a month immediately prior to the organization of the company he had managed it for appellee. Bankruptcy was evidently not chargeable to poor judgment, lack of attention or inexperience, but to inability to realize upon accounts receivable during the universal economic depression complicated by increasingly keen competition. Appellant reached his majority in 1931. He was advised freely at all times about the condition of the business and when creditors began to press the company he and his sister, then having an interest, were fully acquainted with the emergency caused by insufficient cash and the difficulty of collecting accounts due. At that time the company had paid $11,550 in rents and owed $4,600 more. Appellee bought the property at forced sale for $4,500, receiving as a credit on his bid the amount of unpaid rent and thus he obtained much of the property originally conveyed to the corporation, had already been paid more than $11,000, and still held Ruus' note for $15,000. As a successor in the operation of the business, which was not meanwhile interrupted, "Conant Funeral Home" was created. Seventy-two shares of its stock were issued to the estate as a consideration for the property theretofore purchased at the bankruptcy sale; one share was issued to appellee and twenty-seven shares to one E. C. Long who paid therefor $2,000, one-half to the estate ond one-half to the corporation. This organization lasted until December, 1933, and after April 1, 1933, appellant was a director.

The same year appellee sold the stock held by the estate to Long for $500 with appellant's written consent. There was due rent at that time $1,800 for which Long gave his note. Early in the year 1933 appellant secured an audit and employed an attorney, all of which appellee welcomed. Subsequently appellant apologized for this activity and urged appellee not to resign as executor, which he had offered to do. In 1935 appellant purchased his sister's interest in the estate. Again appellee obtained the property used in the undertaking business, or such of it as remained, under distress proceedings for unpaid rents of $1,375, and again he sold it, this time to Florida Funeral Home. Appellee had no interest in "Long & Ruus," successors to Conant Funeral Home, who paid him rental of $1,300.

At the conclusion of appellee's evidence, which was supplemented by that of an auditor from the county judge's office, attorneys who gave opinions as to a reasonable fee and a real estate appraiser who estimated rental value of the real estate, appellant testified about his recollection of the dealings with appellee and the information given him from time to time. What he said was most unconvincing about any misdeeds on the part of appellee or any concealment of information or advise by him.

Adverting to the allegations raised in the bill and the statement of counsel, which we have quoted and referring now to the questions presented in the appellant's brief, it seems we should decide whether appellee has (1) properly accounted for the assets coming to him, (2) mismanaged the affairs with which he was entrusted, and if appellant has ratified appellee's actions.

The chancellor expressly held that proper accounting had been made of "all his acts and doings * * * and of his management of the affairs of said estate." It is said by

appellant's counsel that the testimony relative to this matter "consists mainly" of the copies of the annual returns which are "supposed to accurately and completely reflect the activities and accounts of appellee," but their sufficiency is challenged because of lack of detail in setting forth the items reflecting the activities of the companies in which the appellee was concerned.

We find small support for the position in this record. The various statements seem comprehensive and to have received the sanction of the county judge. The auditor or examiner of that official found no fault with them and the learned chancellor was satisfied with their completeness. Aside from this positive approval, we are offered no specific information as to their incorrectness. It is clear that appellant had an audit of his own but if this divulged any irregularity we are ignorant of it and we are not advised in what particulars the statements are wanting.

We would not condone any straying from the definite bounds fixed to govern one who serves as fiduciary or any violation of the strict rules which require a trustee to account accurately for his trust but by the same token we would be reluctant to cast suspicion on one whom we are not convinced has taken his obligation lightly or been slovenly in reporting his actions. The executor in this case assumed the burden of showing a proper accounting and we think he has borne it well.

Was he, then, regardless of the accounting, shown to have mismanaged the affairs of the estate?

The will contained the provision: "I do authorize my executors and trustees to carry on my business after my death for the necessary length of time to wind same up without unnecessary sacrifice or loss to my estate."

It appears to have been the purpose of the testator to

guard against needless waste of his estate by empowering his executors to carry on, as long as might be necessary, a business in which he spent much of his life. The difficulty of liquidation in the economic conditions which have persisted since the year 1929, or even following the year 1926, when financial depression descended on the State of Florida, is easily understood. The impediments were all the more serious because the property attempted to be sold was adaptable to but one kind of business. Certainly hearses, caskets and the like could be disposed of only to one following the vocation of undertaker.

The "necessary" time to be taken in preventing "unnecessary" loss was a matter to be determined by the executors and, of course, depended on the circumstances.

Appellant has cited Mr. Redfearn's work on Wills and Administration of Estates:

"Under our statutes prior to the Probate Act of 1933 (Acts 1933, c. 16103), the business of a deceased person may be carried on for a reasonable time by the legal representative under order of the circuit court, but the legal representative must give such additional security as the circuit court may require." Sec. 275, p. 477. And also the following law of Florida:

"In all cases where a person shall have died while engaged in any trade or business, the circuit courts of this State are empowered to authorize the curator, administrator or executor of the estate of such deceased person to continue and carry on such trade or business for a reasonable time, under the supervision of such court, and to require such security or additional security of such curator, administrator or executor as the circuit judge may deem proper."

We have noted in his brief also decisions that authority to continue testator's business must be found in the will.

Brabham v. Crosland, 25 S. C. 525, 1 S. E. Rep. 33; *In Re: Ward's Estate*, 127 Cal. App. 347, 15 Pac. (2nd) Rep. 901.

The following is also quoted from Marshall Field & Co. v. Himelstein, 253 Mich. 355, 235 N. W. Rep. 181, 182:

"Except by order of the court, direction in a will, or by consent of all the parties interested, an administrator has no authority to continue the business which was being conducted by his intestate when he died. Having no such authority, it is his duty to liquidate the estate without undue delay."

The substance of the statutory enactment and the doctrines announced in the decisions is that without authority of the will or the court an executor may not continue the business. Here no order of the circuit court was entered empowering appellee to proceed with testator's undertaking concern but the will gave him the right to do so. See 11 R. C. L., Sec. 145, p. 138.

The application of the rule with reference to personal responsibility where the executor acts without authority is inappropriate here even if we assume that appellees did, in fact, carry on testator's business. It will be recalled that Ruus operated the undertaking establishment only one month and that there followed this arrangement a succession of sales to corporations in which the estate owned stock.

Executors named in the will had: "* * * full and complete authority, in their discretion, to sell any or all of my property at public or private sale, if in their discretion, a sale is desirable or for the best interest of my estate, for cash, or on such terms satisfactory to them."

In the light of the two sections of the will which we have quoted, should the actions of appellee be judged.

We cannot invoke the rules that an executor may not

continue testator's business without the sanction of the court and that equity will ignore "the corporate cloak" and, without further investigation set aside the final decree. Powers to sell and to continue the business were specifically vested in the executors and there is no need to pierce the corporate veil when indications of fraud or ulterior motive are lacking. See Thompson on Corporations, 1931 Supp. to 3rd Ed., par. 10, p. 5; Majestic Co. v. Orpheum Circuit, Inc., 8 Cir., 21 Fed. Rep. (2d) 720; United States v. Milwaukee, etc., Transit Co., C. C., 142 Fed. Rep. 247.

The construction we place on appellee's conduct is that he showed considerable intelligence and resourcefulness in attempting to dispose of property for which there was a limited market, the while faced with depressed conditions and keen competition. The formation of the corporations was actuated by a desire to sell the property without "unnecessary sacrifice" and in no sense to conceal any fraud or even irregularity. The rents he received for property occupied were far in excess of a fair amount fixed by a witness whose qualifications clearly appeared and whose "reputation and integrity" were attested by appellant's counsel. He dealt fairly with the legatees and made no effort to conceal from them information of his dealings. No defalcation is shown us nor are we advised of any error in judgment. After a study of the record we are not conscious of any loss for which the estate should be paid were appellee's acts performed without authority.

Because of our views on the first two questions, small space will be used in disposing of the matter of ratification. There was abundant proof to substantiate the finding of the chancellor that appellant ratified appellee's acts and is estopped from complaining of them. His participation in the business of the estate, his acquaintance with its various

phases, his activity as a director in one of the corporations and his attitude toward the whole affair for a period of several years intervening between the day of his majority and the day of the suit do not form a solid foundation for his position as complainant in the cause.

Affirmed.

TERRELL, C. J., and BUFORD, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.