POWELL, GILLIS E., Associate Judge.
This is an appeal from an order entered by the County Judge’s Court for Hamilton County, involving the administration of an estate.
J. T. Bridges, Sr. died testate on April 6, 1962. Prior to his death, the decedent was engaged in the business of buying and selling pulpwood timber, timber lands and farming, operating in the normal course of such businesses on quite a large scale. There was one son and three daughters, all adults, and the son, J. T. Bridges, Jr., and one sister, Virginia B. Chandler, are co-executors of the will. One of the daughters, Mrs. Marilyn B. Sabin, became increasingly dissatisfied through the years in the manner in which the estate was being administered and filed the petition on April 29, 1970, which led to this appeal.
Point I alleges waste and mismanagement in the administration of the estate in the following particulars.
(a) Wrongful continuance of decedent’s business. Section 733.08, Florida Statutes, F.S.A., covers continued operation of a decedent’s business. The general intent of the statute is to discourage continued operation of the business toward the view of winding up an estate as soon as reasonably feasible. See also 14 Fla.Jur. Executors and Administrators, § 83, reading:
“As a general rule, unless expressly authorized by statute, by an order of court, or by will of the decedent, a personal representative does not have the authority or power to continue the estate of his decedent in the trade or business enterprise engaged in by the decedent at the time of his death except for the purpose of disposing of the stock in trade in order to settle the estate or of disposing of the business as a going concern.”
In this case the will did not contain any authority for continued business operation, nor did the executors obtain court approval. Appellant argues at length that the executors made no attempt to comply with the statutory provisions, but on the contrary, substantially enlarged the business operation, incurring unnecessary expenses and unnecessarily prolonging the administration of the estate and that the executors are personally liable. The record reflects that soon after the death of their father, the heirs agreed to continue to operate the business and that Mr. Bridges, Jr. would continue to draw a salary of $125.00 per week for management services. Further, by agreement, they formed a corporation named The Bridges IV, Inc. to purchase and develop some property. The executors’ position, with respect to continued operation of the business, was that these activities were only of such nature as were necessary to feasibly liquidate and terminate same. The County Judge upheld the executors’ contentions and there is abundant evidence in the record to support his findings. We observe that the original continuation of the operation of the business was with the knowledge and consent of the appellant.
(b) Improper expenditures.
(1) Office building. Appellant argues that the executors have spent large sums of money on transactions that did not benefit the estate and cites, as a prime example, the moving and rebuilding of an office for the estate in the sum of $14,499.80. It is further argued that the office was used by Mr. Bridges, Jr. for personal business as well as for estate business. While there may have been some duplicated usage, the evidence is insufficient to prove that the expenditure was unreasonable or extravagant compared to the scope and volume of the business operations that were conducted. Of course, this office building is an asset of the estate to be taken into consideration at distribution.
(2) Radio equipment. The appellant makes the same objection to the purchase, by the executors, of about $3,500.00 worth of radio equipment. This communi *200 cation equipment has become almost essential in this type business and we make the same finding with respect to this item as applied to the aforesaid office building.
(3) Salary paid to J. T. Bridges, Jr. and executors’ fees. The County Judge determined that the amount accounted for in the estate was $923,000.00 and approved in the order appealed from, the salary of $125.00 per week drawn by Mr. Bridges, Jr., and awarded an additional $23,170.00 to him as executor’s fees and a like sum of $23,170.00 to his sister, Mrs. Chandler, as co-executor. The appellant argues that the executor failed to meet the burden set forth in 734.01(1) (c), Florida Statutes, F. S.A., and that any expenses incurred and paid must be established to the satisfaction of the Court as “necessary expenses.” Further, that any claim made by a personal representative for extra compensation places the burden on the claimant to show that such extra services are in fact extraordinary and that the amounts paid are reasonable. -See: In Re Lieber’s Estate (Fla.1958), 103 So.2d 192. Appellant alleges that the record is devoid of any evidence to substantiate the value of such services and that the total of some $65,000.00 for salary plus the executor’s fee of $23,170.00 and other administration expenses constitute waste, mismanagement or diversion of estate assets and that the County Judge erred in ruling to the contrary. The record clearly establishes that the salary arrangement of $125.00 per week was a continuation of an arrangement between Mr. Bridges, Jr. and his deceased father, which began in 1946. Further, a few days after the funeral, all the members of the family had a meeting, at which time, an overall discussion of family affairs was held and all parties and all heirs, including the appellant, expressly agreed that the salary of $125.00 per week was fair and that Mr. Bridges, Jr. would continue to perform the duties that he had previously performed. This arrangement was continued through the years and we feel, and so determine, that the salary compensation was a reasonable arrangement between the parties. We likewise find that the fee of $23,170.00 awarded to Mrs. Chandler, as co-executor, is reasonable and we approve the award of the County Judge accordingly. However, we determine that the executors’ fee of $23,170.00 awarded to Mr. Bridges, Jr. in addition to the sum of over $65,000.00 received as weekly salary is excessive. We recognize and appreciate that Mr. Bridges, Jr. has made valuable contribution to the preservation and administration of the estate. However, in view of the overall circumstances, including the fact that he has been able to operate his own business of the same general type as that conducted on behalf of the estate, we determine that the additional award for executor’s fee would not be appropriate. The award by the County Judge of executor’s fee of $23,170.00 to Mr. Bridges, Jr., is reversed.
(4) The home place. Appellant complains of $4,500.00 spent by the executors in making improvements to the home place for air conditioning and heating, improvement to the swimming pool area and construction of a paved road leading from the highway to the house. Upon the death of Mr. Bridges, Sr., title to the home place became vested in the four children heirs, subject to a life-estate held by their mother, Addie Belle Bridges. The widow was living there at the time the improvements were made. The reason that Mrs. Bridges, Sr., who has now remarried, is not mentioned further in these proceedings, is because the four children made a settlement with her for her share of the estate. This is a situation where the children agreed to expend certain sums on the home place to make it more comfortable for their mother. Such payment of funds constituted an advance distribution to the four beneficiaries, each in effect contributing one-fourth to improving their mother’s home. This is commendable and we would not pursue the matter further except for the fact that the record discloses that Mr. Bridges, Jr. later acquired the interest of his mother, Mrs. *201 Bridges, Sr., and is now residing there. The best we can ascertain from the record is that he acquired only her life-estate and title remains vested in the four heirs. It further appears that the improvement for insulation and air conditioning amounted to $3,173.52 and $1,200.00 was expended for paving. These expenditures were capital or permanent in nature, and except for depreciation, will enhance the value of the property, and thus increase the value of the one-fourth undivided interest of each. In view of the nature of the expenditures, the original purpose, the fact that they were made by agreement of all concerned and the overall circumstances, we find and determine that there is sufficient evidence to support the finding of the County Judge in this respect.
(5) Loans to Bridges IV, Inc. As previously noted, the heirs agreed to form a corporation which they named Bridges IV, Inc. The record disclosed that the appellant not only agreed to this venture, but actually suggested the corporate name that was adopted. This corporation was apparently formed for the purpose of acquiring ' and developing some real estate and other investments. Obviously, the corporation required capital. Between December 7, 1965, and July 15, 1966, the amount of $51,877.27 was advanced by the co-executors from the assets of the estate to the corporation and journal entries were made reflecting such advance to have been equally made by each of the four heirs in the amount of $12,969.31 each. The appellant became dissatisfied and a meeting was held between the parties on August 15, 1966. The appellant and her attorney protested such actions and placed the executors on notice that no additional distribution should be made from the estate to the corporation. By letter dated August 26, 1966, from appellant’s attorney, these directions were repeated in writing. Subsequently, additional loans were made to the corporation. Also, during the period from November, 1967, to November, 1968, the “advance account” of Mr. Bridges, Jr., had been reduced from $12,969.31 to $1,969.31, being a reduction of $11,000.00. The probate judge is directed to fully determine the nature of this deduction and to ascertain whether or not the same was accurate and appropriate. The probate judge is further directed to require an accounting and appropriate proportionate repayment to the estate of all sums owed by Bridges IV, Inc.
(c) Failure to properly invest funds of the estate. Appellant claims that there was cash funds on hand through the years that should have been invested and failure to do so was mismanagement. Personal representatives are governed by the “prudent man rule” set forth in 518.11, Florida Statutes, F.S.A., as follows:
“In acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, executors, administrators, trustees, and other fiduciaries shall exercise the judgment and care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.”
These invested amounts of cash as of the end of the estate’s fiscal years of February 28, 1963, through February 28, 1969, were as follows:
February 28, 1963 Over $78,000
February 28, 1964 Over $56,000
February 28, 1965 Over $48,000
February 28, 1966 Over $10,000
February 28, 1967 Over $29,000
February 28, 1968 Over $16,000
February 28, 1969 Over $20,000
The executors claim that these were insufficient sums below reasonable capital requirements to justify investment. They further contended that it was necessary to keep cash on hand to meet requests of the heirs through the years. In view of the *202 scope of the business operation, the distribution made to the heirs, the costs of administration and the capital requirements, we agree and uphold the County Judge’s findings that the executors did not abuse their discretion in this respect.
Point II on appeal relates to government tobacco allotments and is one of the focal points on appeal. These allotment ranged from a high of 47.18 acres in 1962, to a low of 32.89 acres in 1965 and were generally about 35 acres per year. The executor’s position is that these tobacco allotments were not assets of the estate, but that Mr. Bridges, Sr., wanted the son to have them and had traded the tobacco allotments to the son in exchange for soil bank and pine tree plantings benefits owned by the son. They take the further position that the allotments belonged to the son as “operator” of the farms in contrast to the owner of the acreage. The county agent testified at length and the jist of his testimony seems to be that in the absence of a provision in the will or an agreement among the heirs, the tobacco acreage is divided by the “cropland method” which is by a percentage of the cropland that each heir received. Appellants strongly argue that at the time of his death, Mr. Bridges, Sr., owned 1843 acres of land covered by tobacco allotments, that these allotments were valuable assets and that the executors, in violation of their duty and responsibility under 733.01 and 733.03, Florida Statutes, F.S.A., failed to include them as assets of the estate. Further, that Mr. J. T. Bridges, Jr. has improperly and unlawfully used these allotments to grow tobacco crops on his own land without any accounting for the benefits thereof. Mr. George L. Milligan, a certified public accountant, testified that he represented Mr. Bridges, Sr., in connection with the preparation of audits and federal tax returns from the year, approximately, 1952, to the year following his death, which occurred on April 6, 1962; that none of these tax returns contained any income or evidence of income from tobacco allotments or from property covered by tobacco allotments; on the other hand, the federal tax returns prepared and submitted for Mr. Bridges, Jr., contained income from tobacco for 1960 of $50,832.30 and in 1961 of $59,736.-50. Mr. Milligan further testified that he had full, frank and frequent discussions, through the years, with Mr. Bridges, Sr. and Mr. Bridges, Jr. pertaining to their assets, business transactions and financial affairs and that at no time did he have any discussion with Mr, Bridges, Sr. pertaining to tobacco allotments that he may have owned:
“Q During the course of your engagement by the Bridges interest, I will refer to it as, beginning about ’52 you stated, did you personally make trips on occasion to Jasper in connection with your accounting matters?
A My work was done in Jasper every year.
Q Did you see during those years from ’52 to ’62, the date of Mr. Bridges’ death — did you see a good bit personally of Mr. Bridges, Sr., and Mr. Bridges, Jr.? Here he is over here.
A Yes, sir. They were both present every year during the annual accounting.
Q And in connection with your accounting audit — in connection with your audit, I guess is a better term, did you have occasion to discuss with them anything which you desired to know regarding individual assets ?
A Yes, sir. I think they gave me any information I asked for.
Q Did you ever have any difficulty getting information from either of them in the sense that you had to pry it out of them, that they were holding back on you ?
A No. In fact, Mr. Bridges, Sr., had a fulltime bookeeper whose job was to help furnish this information.
*203 Q In the course of those ten years of association and audits, did you ever have occasion to learn of any tobacco allotments that Mr. Bridges, Sr., owned at anytime during those years ?
A It was never discussed with me and I have no knowledge of any that he might have owned.
Q At the date of death of Mr. J. T. Bridges, Sr., on April 6, 1962, do you have any knowledge of any tobacco allotments that he owned on that date?
A No, sir, I have no knowledge of such.
Q Did you give to me for preparation of that return any listing or showing of tobacco allotments amoung assets?
A Not to my knowledge.”
Beginning January of 1965, Mr. Robert R. Beidelman, a certified public accountant, succeeded Mr. Milligan’s firm in the representation for accounting purposes of the Bridges Estate. Mr. Beidelman testified that he had prepared the federal tax return for the estate each year thereafter and that he prepared an annual audit at the end of each fiscal year and that none of the heirs had made any complaint to him of his work. While Mr. Milligan was testifying about the tobacco allotments, by agreement of counsel, Mr. Beidelman was called in to assist in locating pertinent tax returns and data to assure the accuracy of the testimony. It is noted that the tobacco allotments were not included in the federal estate tax return nor the federal estate income tax returns. In addition to the testimony of the county agent and the accountants, there is voluminous other testimony of the parties and numerous evidentary documents pertaining to these tobacco allotments. There are many conflicts in the evidence. We observe, that had we been the triers of fact on this issue, we might well have reached a different result, but there is sufficient evidence in the record to uphold the findings of the County Judge.
Point III. In this final point on appeal, the appellant alleges that the executors have unnecessarily prolonged and delayed the termination of the estate administration. ■ Subsequent to the filing of her petition on the date of April 29, 1970, the executors filed on the date of November 18, 1970, their petition for leave to distribution of substantially all of the assets. The order entered by the County Judge from which this appeal ensued directed the executors to submit a plan of proposed distribution of all assets within sixty days from date of said order. It would serve no useful purpose here to further comment on the numerous claims by the appellant of unnecessary delay and the explanation and justification alleged by the executors. Suffice it to say that the administration of this estate has dragged on long enough. It appears from the record that all parties now feel the same way. In any event, the probate judge is directed to require forthwith termination of the administration of this estate as soon as reasonably possible with all due diligence.
Finally, the appellant in her petition, sought an award of attorney fees and costs to be paid out of the funds recovered for the benefit of the estate. This request was denied by the County Judge in the order under appeal. While this is not specifically included within the three points on appeal, the appellant argues for this relief in her brief. Also, it is probably covered in appellant’s assignment of error number one, “The Court erred in denying petition of beneficiary.” We determine that the court costs incurred by the appellant should be borne by the estate. We further determine that the estate should bear part, but not all, of the attorney fees incurred by the appellant and direct that the probate judge allow an attorney fee of $2,500.00 to appellant’s attorney to be charged against the estate.
*204 The order appealed from is affirmed in part and reversed in part and the cause is remanded to the trial court for further proceedings consistent and in conformity with this opinion.
RAWLS, C. J„ and WIGGINTON, J., concur.