383 So.2d 268 (1980)
Howard BECK, As Personal Representative of the Estate of Vincent Pinto a/K/a Vince Pinto, Deceased, Individually and On Behalf of the Estate of Vincent Pinto, Deceased, Etc., Appellant,
v.
Dawn BECK, a/K/a Dawn R. Beck, Appellee.
Nos. 79-1116 to 79-1118.
District Court of Appeal of Florida, Third District.
May 6, 1980.
*270 Aronovitz & Weksler and Bernard B. Weksler, Miami, for appellant.
Miller & Podell and Mortimer I. Podell, Miami Beach, for appellee.
Before SCHWARTZ and NESBITT, JJ., and CHARLES A. CARROLL (Ret.), Associate Judge.
NESBITT, Judge.
Howard Beck appeals an order of the probate court holding him personally liable to Dawn R. Beck, his daughter, for improper administration of the estates of Vincent Pinto and Selma Pinto as well as improper administration as guardian of the property held for Dawn as a minor. No error having been demonstrated, we affirm the order of the probate court.
The Pintos died testate and Mr. Beck qualified as personal representative of their estates in 1975. Mr. Beck and Dawn were the principal heirs and residual beneficiaries of both of the estates, the aggregate value of which was approximately $700,000. Mr. Beck was required to qualify as guardian of the property which Dawn received because her distributable share exceeded $5,000.[1] Dawn became emancipated on November 18, 1977.[2] Prior to that time, the Pintos' estates were closed. Shortly after she attained her majority, Dawn procured an order from the probate court requiring the Pintos' estates to be reopened and final accountings to be prepared in both the decedents' estates and in her guardianship estate. Dawn then filed objections to the final accountings. The objections were consolidated for trial because of their interrelationship.[3] After hearing voluminous testimony and evidence, the probate court issued the order appealed from holding Mr. Beck personally liable to his daughter for the sum of $75,138.41.[4]
Mr. Beck contends generally that the probate judge erred in shifting the burden of proof to him, as a fiduciary, to overcome Dawn's objections to his final accounting. He specifically contends that the probate court erred in holding him personally responsible for the continued operation of Mr. Pinto's former businesses, racing greyhounds and the breeding and training of horses, in that the continuance was authorized by the omnibus provision of Mr. Pinto's will.

BURDEN OF PROOF
In estates of decedents and wards, the party bearing the affirmative of an issue has the burden of proof. 34 C.J.S. Executors and Administrators § 784 b; 39 C.J.S. Guardian and Ward § 155 a. This is in accordance with the general rule that the *271 proponent of an issue carries the burden of proof ordinarily by the greater weight of the evidence. 13 Fla.Jur. Evidence §§ 58, 431.
In the instant case, Mr. Beck, as personal representative, conceded that he failed to maintain adequate records and that he commingled guardianship, estate and personal funds. The probate court further found that he failed to substantiate loans which he claimed were personally advanced to the estate. This admission and finding invoked the presumption applicable to a trustee of an express trust and shifted the burden of going forward with the evidence to the personal representative. As stated in Benbow v. Benbow, 117 Fla. 37, 157 So. 512 (1934);
If the trustee fails to keep clear, distinct, and accurate accounts, all presumptions are against him and all obscurities and doubts are to be taken adversely to him. If he loses his accounts, he must bear any resulting damage... .
The burden of proof is upon him to show that the money expended was a proper disbursement.
157 So. at 519. See also Vol. II Scott on Trusts § 172 (2d ed. 1956). A personal representative of an estate and a guardian of property are required to exert the same standard of care as that of a trustee acting under an express trust.[5] The funds of decedents and wards are nothing more than trust funds. In re Estate of Maxcy, 240 So.2d 93 (Fla.2d DCA 1970). Consequently, the probate court properly required Mr. Beck to overcome certain of the objections filed and simply found that he failed to do so.

FEES
Mr. Beck claimed, and the Internal Revenue Service allowed, aggregate gross attorneys' fees in the Pintos' estates in the sum of $67,500. He had a court order to disburse $20,000 of that sum. Dawn challenged the reasonableness and necessity of the fees paid. At the time the objections were heard, the Florida Probate Code of 1976 had been amended to permit the personal representative to compensate, without obtaining a court order: himself, attorneys, accountants, appraisers and other agents employed by him. § 733.617, Fla. Stat. (1977). However, Dawn's challenge to payment of that compensation invoked Section 733.6175, Florida Statutes (1977), which placed the burden of proof as to the propriety, reasonableness and necessity of such payments upon the personal representative. Mr. Beck's own expert witness placed the maximum allowable range of attorneys' fees at $45,000.
The probate court correctly placed the burden of proof on Mr. Beck to produce evidence to justify payment of such compensation. Having failed to meet that burden, Mr. Beck was properly charged with liability for the excess.[6]

CONTINUATION OF DECEDENT'S BUSINESS
Paragraph seven of Vincent Pinto's will contained an omnibus clause which provided:
My Executor shall have full and unrestricted discretionary power and authority to hold, manage, control, improve, grant, convey, deliver, assign, transfer, lease, option, mortgage, pledge, borrow upon the credit of, contract with respect to, or otherwise deal with or dispose of, without application to or order of court, the property of my estate and trust estate, without any duty upon any person dealing with them to see to the application of any money or other property delivered to them, it being my express intention to confer every power of management *272 which might be conferred upon them by an express enumeration of separate powers.
Mr. Beck contends that the quoted paragraph authorized him to continue Mr. Pinto's business without court order. Under the Probate Code of 1933 as amended, the continuation of a decedent's business was authorized only by will, order of the court, or by statute. Conant v. Blount, 141 Fla. 27, 192 So. 481 (1939); In re Estate of Bridges, 282 So.2d 197 (Fla.1st DCA 1973). When authority to continue a decedent's business is provided by will "such authorization should be in distinct and positive terms." 31 Am.Jur.2d Executors and Administrators § 221.
The Probate Code of 1976 is largely declaratory of the prior decisional law. Section 733.612(22), Florida Statutes (Supp. 1976) authorizes the personal representative to continue a decedent's unincorporated business for a period of four months from the date of his appointment if continuation is a reasonable means of preserving the value of the business including good will.[7]
An omnibus clause is not exculpatory in nature. It is a grant of authority. The personal representative, who acts pursuant to the authority of a will or the probate code, may nonetheless be held liable for improper administration or mismanagement of a decedent's estate. In re Anderson's Guardianship, 75 So.2d 790 (Fla. 1954); In re Estate of Feldstein, 292 So.2d 404 (Fla.3d DCA 1974). The omnibus clause did not authorize continuation nor did it insulate Mr. Beck if he chose to continue Vincent Pinto's businesses.
The record reflects the probate court's concern with the mismanagement of Dawn's guardianship estate. The probate court had ordered that all guardianship accounts be restricted so as to prohibit the guardian of the property from making withdrawals without a special court order. In spite of this, no accounts were ever established and the funds were admittedly comingled.
Funds distributed to Dawn's guardianship estate were used to defray operational costs of businesses run on behalf of Mr. Pinto's estate. Absent court approval, payments could not properly be made with funds of the guardianship estate to operate the decedent's estate. § 744.444, Fla. Stat. (1979). Other funds allocable to Dawn's distributable share were utilized to provide for her personal care and maintenance. Mr. Beck, having the ability to provide for his minor daughter's sustenance and maintenance, could not properly invade her guardianship estate unless specifically authorized by order of the court. § 744.397(3), Fla. Stat. (1979).

CONCLUSION
At trial, it was conceded that Mr. Beck was indebted to Dawn in the sum of $27,416.58. Mr. Beck complains here of the probate court's failure to make specific findings regarding the improper management of the estates and to assess dollar values thereto so as to justify the remaining surcharge of $47,721.83. While this undoubtedly would have been the better practice and would have aided this court in the resolution of the matter, the probate courts of this state have no such responsibility. The record amply reflects the propriety of the surcharge against Mr. Beck for payments he made with funds from Dawn's share of the estate for: (1) her use and benefit (without obtaining court approval); (2) overpayment of attorneys' fees; and (3) improperly documented loans claimed to have been personally made to the estate.
An order of the probate court arrives in the appellate court clothed with the presumption of its correctness and will be affirmed if it can be supported on any theory. In re Estate of Schor, 172 So.2d 888 (Fla.3d DCA 1965). The findings of a probate court are entitled to the same weight as the findings of any other trier of fact. In re Estate of Winslow, 147 So.2d 613 (Fla.2d DCA 1962). The burden is on *273 the appellant to show that the findings and order of the probate court are clearly erroneous. Gardiner v. Goertner, 110 Fla. 377, 149 So. 186 (1933).
Affirmed.
NOTES
[1] § 744.301(2), Fla. Stat. (1975). Both decedents' estates as well as Dawn's guardianship estate were commenced under the Florida Probate Act of 1933 as amended and prior to substantial amendments to the Florida Guardianship Law, all of which became effective January 1, 1976.
[2] § 743.07, Fla. Stat. (1977).
[3] The objections to the accountings were tacitly tried as a petition to hold the personal representative personally liable pursuant to Section 733.609, Florida Statutes (1977).
[4] The order also retained jurisdiction to tax attorney's fees in favor of Dawn [§ 733.609, Fla. Stat. (1977)] but that feature of the order is not challenged.
[5] See Sections 733.602(1), 737.302 and 744.377(1), Florida Statutes (1975) which were in effect during the period of the guardianship and administration of the Pintos' estates. These statutes establishing the "prudent trustee" standard remain unchanged.
[6] Had the attorneys who received the compensation been afforded notice and been joined in the proceedings, the court might have required them to make appropriate refunds. § 733.6175, Fla. Stat. (1977).
[7] All of the powers conferred upon the personal representative under Section 733.612, Florida Statutes (Supp. 1976) may be negated or ratified either by the will or by court order.