HURLEY, Judge,
dissenting.
I would reverse the $24,500 final judgment entered in favor of the plaintiff/ap-pellee because I do not believe it is supported by competent substantial evidence.
George deClaire is an attorney. He is also the former son-in-law of Ernestine and Donald Wartena. By his own admission, deClaire performed legal services for his in-laws for over nineteen years without ever presenting a bill or maintaining a time record. Indeed, he testified that he has no way of gauging the actual time expended on this work and has never discussed a specific fee arrangement with his in-laws. Nonetheless, when deClaire’s nineteen year marriage ended in a bitter, hard-fought divorce, he instituted suit against his in-laws and, for the first time, claimed entitlement to $580,000 for professional services rendered during the preceding nineteen years. The trial court narrowed the time frame by granting a partial summary judgment. The court applied the four year statute of limitations contained in section 95.11(3)(k), Florida Statutes (1981), and limited recovery to services performed after March 21, 1976.
The dispositive issue in this case is whether there was an express or an implied contract between the parties which entitled Mr. deClaire to compensation for services rendered. Obviously, the trial court’s award of $24,500.00 signifies an affirmative finding which, in turn, comes to this court clothed with a presumption of correctness. Beck v. Beck, 383 So.2d 268 (Fla. 3d DCA 1980). Yet, it is equally true that to be affirmed on appeal, a final judgment must be grounded in competent substantial evidence. Walker v. Harris, 398 So.2d 955 (Fla. 4th DCA 1981). The record in the case at bar is simply devoid of any competent substantial evidence to support the final judgment. Mr. deClaire’s own testimony established that throughout the nineteen year period, he never presented a bill, never maintained a time record and never discussed a fee arrangement with his father-in-law. This testimony, in my view, absolutely negates Mr. deClaire’s present claim for compensation. The relationship between the parties, coupled with Mr. de-Claire’s expectation that some day he would probate the estate of his well-to-do father-in-law fully explain the course of conduct.
On the other hand, even if one assumes that the record does contain sufficient evidence to justify an award, it does not support the $24,500 figure awarded by the trial court. Mr. deClaire testified that he performed legal services in connection with four different projects after March 21, 1976. The first project involved the Warte-nas’ purchase of a lot and the subsequent building of a home thereon. It was undisputed, however, that the closing took place in October, 1975 — -well before the March 21st cut-off date. On cross-examination, Mr. deClaire admitted that the deed and other related papers were mailed to the Wartenas in January of 1976 — again, before the cut-off date. Furthermore, correspondence in the record suggests that Mr. deClaire’s representation at the closing was done for the express purpose of saving his father-in-law additional expense. In a letter dated August 10, 1977, addressed to Alexander L. Suto, Esq., Mr. deClaire wrote, “I closed the land purchase on Don’s present home which saved him a respectable fee.” In short, deClaire’s services connected with the closing should not have been considered by the trial court. As for the building of the home, the only service to which Mr. deClaire could point took place “in the spring of ’76 sometime.” This involved one or two conversations with Matthew Sicca, a representative of the Royal Palm Improvement Association. According to Mr. deClaire, Mr. Sicca bicycled over to the deClaire home where the two men agreed that the association would approve the plans for the Wartenas’ home if *717 the Wartenas agreed to place a trellis or walkway between the home and a proposed gazebo — hardly the type of professional service to justify a $24,500 fee.
Mr. deClaire next testified that he handled an insurance claim for his father-in-law involving a stolen automobile. This work was also supposedly performed after March 21, 1976. However, on cross-examination, Mr. deClaire admitted that “[c]on-ceivably I’m wrong.” The Wartenas then produced the insurance agent who actually handled the claim. He testified that his company’s records reflected that the car was reported stolen on August 4, 1974.
The third event for which Mr. deClaire sought compensation involved a business transaction between Mr. Wartena and his other son-in-law, James A. Mullen, Jr. Mr. deClaire testified that pursuant to his advice, Mr. Wartena executed a limited guaranty on a printed bank form. This document enabled Mr. Wartena to give financial backing to Mr. Mullen while limiting Mr. Wartena’s financial exposure. When pressed for the date of this transaction, Mr. deClaire frankly admitted that he was relying on memory, but stated that he believed it occurred after March 21, 1976. The Wartenas, however, produced the signed, notarized original limited guaranty form which reflects an execution date of May 16, 1973.
The only transaction which conceivably occurred after the March 21st cut-off date involved the sale of the Wartenas condominium apartment. The deed was first recorded on March 19, 1976, but the omission of a witness’s signature caused Mr. de-Claire to file a corrected warranty deed on March 29, 1976. Also, Mr. deClaire prepared a letter of transmittal concerning a parking spacé at the condominium on April 17, 1976. Again, assuming for the sake of argument that this transaction merited some compensation, it cannot be contended that it would justify a $24,500.00 award.
Finally, it is impossible not to note the connection between this case and the de-Claires’ dissolution litigation. Mr. deClaire revealed the animus underlying both cases when he wrote to Alexander L. Suto, Esq., an attorney who represented Mrs. deClaire during a portion of the dissolution litigation, and stated:
In all events, I am now faced with the unpleasant fact that Donna claims a special equity in my home due to all of her “family contributions,” most of which went into gewgaws for herself; so I have no other recourse than to sue for the reasonable value of my services. As soon as the dissolution case is concluded, I will, unless the matter of my fee is satisfactorily settled, put the matter in suit. As my offhand choice of counsel, I am thinking of Roger Harper since that would be a good type of case for him and, as you know, he is tenacious. You will enjoy working with him.
With this record it was incumbent on the trial court to be especially cautious to prevent the truth-seeking-process from being subverted by a personal vendetta. Unfortunately, it appears that this is a ease in which spite prevailed over proof. However, an appellate court is empowered to reject “inherently incredible and improbable testimony,” Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976), and, therefore, I would discount Mr. deClaire’s explanation. Additionally, because the final judgment cannot be squared with the proof, I would reverse and remand with instruction to enter a final judgment in favor of the appellants.