639 So.2d 60 (1994)
In re GUARDIANSHIP OF Brian David WALPOLE, Incompetent.
The PUBLIC TRUSTEE OF STEWART HOUSE, Appellant,
v.
FIRST UNION NATIONAL BANK, as successor to Atlantic National Bank, As Guardian of the Property of Brian David Walpole, Appellee.
No. 92-3334.
District Court of Appeal of Florida, Fourth District.
April 27, 1994.
*61 Betsy E. Gallagher of Kubicki Draper, Miami, for appellant.
Abe Rosenberg of Abe Rosenberg, P.A., Hollywood, for appellee.

ON MOTION FOR CLARIFICATION
PARIENTE, Judge.
The opinion of this court filed February 16, 1994 is withdrawn and the following opinion is substituted. Appellant's motion for rehearing is otherwise denied.
The central issue raised in this appeal is whether a probate court has discretion to deny a petition to terminate a guardianship of the property when the ward no longer resides in the state. We find no abuse of discretion in the probate court's order denying the petition to terminate and do not find that termination was mandatory as a result of the ward's change of domicile from Florida to the United Kingdom.
Brian David Walpole (the ward) was born mentally handicapped in 1944 in the United Kingdom. The ward later emigrated to Florida with his mother who died in an automobile accident in 1979 in which the ward was injured. Apparently, the ward's uncle removed the ward to Wales in the United Kingdom subsequent to 1979 without court order or knowledge. Neither the uncle nor the ward were represented in the present proceedings to terminate the guardianship. Additionally, no guardian ad litem was appointed to represent the ward's interests.
The value of the guardianship property in question currently exceeds $305,000. The original corpus of the guardianship resulted from a damage award to the ward arising from litigation connected with the 1979 automobile accident. The ward's mother also established a testamentary trust in her will for the benefit of the ward which has a corpus currently in excess of $264,000. The terms of the testamentary trust specify that the trust shall be administered by a Florida bank. First Union National Bank (bank) serves as guardian of the property and also trustee of the testamentary trust. The bank administers both accounts.
The appellant, Public Trustee of Stewart House (Public Trustee), brought the petition to terminate the guardianship. The Public Trustee is a department within the British judicial system which acts as a receiver for people who are unable to manage their own financial affairs. The British case worker *62 assigned to the ward by the Public Trustee is 200 miles from the ward's home in Wales where the ward lives with two other persons. Two caretakers live across the street. The assigned case worker has only visited the ward on one occasion in a three-year period. The only testimony concerning the function and authority of the Public Trustee as guardian under British law was provided solely by the British case worker assigned to the ward who was an employee of the Public Trust, a governmental office.
The probate court, after an evidentiary hearing, specifically found that the ward's interest would best be served if the property were not transferred to the United Kingdom and if one financial institution handled the ward's money. The court cited the potential for miscommunication if two financial entities, one in Florida and one in the United Kingdom, were separately handling the testamentary trust and the guardianship of the property for the benefit of the ward, as each institution would have discretion in determining the amount of distribution for the ward's benefit.
The Public Trustee contends that the probate court erred when it denied its petition to terminate the guardianship claiming that, if the guardianship were terminated in Florida, the funds would be closer to the ward; the cost of administration would be reduced; and U.S. taxation of the funds would be eliminated. The Public Trustee claims good cause has not been established to warrant keeping the funds in Florida.
The Public Trustee filed the petition pursuant to section 744.524, Florida Statutes (1991), "termination of guardianship on change of domicile of resident ward." That section provides in pertinent part:
When the domicile of a resident ward has changed as provided in s. 744.2025,[1] and the foreign court having jurisdiction over the ward at his new domicile has appointed a guardian and that guardian has qualified and posted a bond in an amount required by the foreign court, the guardian in this state may file his final report and close the guardianship in this state.... If an objection is filed to the termination of guardianship in this state, the court shall hear the objection and enter an order either sustaining or overruling the objection. Upon the disposition of all objections filed, or if no objection is filed, final settlement shall be made by the Florida guardian.
We have no Florida cases to guide us in construing this statute, the companion rule, Florida Rule of Probate 5.670, or the predecessor statute or rule. This statute and rule 5.670 set up a procedure to insure proper transfer of funds between two guardianships when a ward has moved to another jurisdiction. However, it is clear that the statute affords the trial court discretion in making the decision to terminate the guardianship, because it contemplates that objections could be filed and that the court would hear the objections and either sustain or overrule the objections. The statute does not create a presumption that the guardianship must be terminated upon a change of domicile of the resident ward.
In most cases, we would contemplate that once the requirements of the statute are fulfilled, termination of the guardianship would be appropriate when the domicile of the ward has changed. The paramount consideration is the welfare of the ward and his or her best interest. We agree that absent a showing of good cause, termination should be permitted. However, when countervailing considerations are brought to the court's attention, these countervailing considerations must be weighed, and in the end, a decision as to whether the termination of guardianship *63 would serve the best interest of the ward should be reached by the probate court.
Here, the probate court determined that countervailing factors in favor of the guardianship remaining in Florida outweighed the reasons advanced by the Public Trustee for termination. The probate court's order arrives before us clothed with a presumption of correctness and it is the appellant's burden to demonstrate that the findings are clearly erroneous. Beck v. Beck, 383 So.2d 268 (Fla. 3d DCA 1980). If the probate court's decision can be affirmed on any theory, it must be affirmed. Beck; In re Estate of Schor, 172 So.2d 888, 889 (Fla. 3d DCA 1965). We are not going to engage in the reweighing of the evidence. We cannot say that the findings of the probate court are contrary to the manifest weight of the evidence, which is the standard required for reversal of a probate court's discretionary decision. Beck; In re Estate of Hobein, 238 So.2d 497, 499 (Fla. 1st DCA 1970). The public trustee has not demonstrated that the probate court's findings are clearly erroneous.
Moreover, the Public Trustee misplaces its reliance on Layton v. Pribble, 200 Va. 405, 105 S.E.2d 864, 869 (1958). In that case, the court held there was no reason why a transfer should not have occurred from Virginia to Delaware where the ward lived with her sister. There were no factors in Layton to complicate the administration of the transferred property. There was no separate trust corpus involved and no risk of miscommunication or potential for disputes regarding who would assume the cost of paying certain items needed by the ward. The guardian in Layton was a close friend of the family for more than a half a century who lived in the same town as the ward and had a personal interest in the ward's needs.
The probate court here had various factors which it weighed both for transfer and against transfer. The probate court's findings support a showing of good cause for the funds to remain in Florida under the administration of a single financial entity. The fact that the Public Trustee is a governmental office, apparently akin to our Department of Health and Rehabilitative Services, places it in a different category than either a private person, close family friend or a private institution.[2] The Public Trustee has pointed to no instance where the present guardian of the property has either mismanaged or improperly managed the guardianship monies.
Accordingly, we affirm the decision of the probate court.
AFFIRMED.
ANSTEAD and STONE, JJ., concur.
NOTES
[1] This section became effective on October 1, 1990; the Public Trustee contends that the ward moved to the United Kingdom prior to its effective date. However, appellant fails to acknowledge that a prior section that was effective before the Ward moved, section 744.201 (enacted by Ch. 74-106, Laws of Florida), Part 2, "Guardianship," and titled, "Change of domicile of ward. ", provided: "The domicile of a resident ward is the county where the guardian of the person was lawfully appointed. Upon good cause shown the court may authorize a change of domicile of the ward." Thus, the ward could move only with court approval. It appears from the record that no court approval was sought or granted. This is not an issue on appeal, however, but points out the unusual nature of this case.
[2] If the ward, through a guardian ad litem, favored the transfer, that might have affected our ultimate decision.